GEORGE HOTIS, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER R. R. Co., Appellant.

*Supreme Court, Third Department, General Term, July 6, 1889.*

1. *Master and servant.    Appliances.*—Where an employee is injured through a defect in the implements furnished him for his use, knowledge of such defect, in the employer must be shown, or proof of omission to exercise proper care to discover such defect must be given.
2. *Same.    Inspection.*—The duty of inspection varies according to the liability of the implement to wear out, and the risk, when impaired, to the employees.
3. *New trial.*—Where the evidence as to the identity of the car is conflicting, and the majority of the witnesses testify that the accident occurred on a car whose brake was not defective, a verdict for plaintiff is contrary to the evidence.
4. *Master and servant.    Negligence.*—Where there is nothing to show that a defect in a brake was known to, or could have been discovered by the company, before the accident occurred, the company is not liable for any injury caused to a brakeman in consequence of such defect.

Action by the plaintiff against the defendant for personal injuries received by the plaintiff while a brakeman in defendant's yard at Green Island.    He, while in the exercise of his duties, was standing on the roof of a freight car which had just come into the yard from Schenectady, and fell to the ground and was injured.    His theory of the case was that the accident was caused by the loosening of the brace connected with the brake which he was testing.

The jury rendered a verdict for plaintiff; and from a

judgment entered thereon, and from an order denying a motion for a new trial, the defendant appeals.

*Hamilton Harris*, for appellant.

*Edwin Countryman*, for respondent.

LEARNED, P. J.—There is no doubt of the general principle that the master owes the servant the duty of furnishing suitable machinery.   But this is not an absolute duty ; nor is the master an insurer to the servant of the safety of the machinery.   It is a duty which is satisfied by the exercise of reasonable care and prudence.   Where an injury to an employee results from a defect in the implements furnished, knowledge of the defect must be brought home to the employer, or proof given that he omitted the exercise of proper care to discover it.   Devlin *v.* Smith, 89 N. Y. 470 ; Probst *v.* Delamater, 100 Id. 272 ; Arnold *v.* Delaware and Hudson Canal Company, 6 N. Y. State Rep., 368 ; Cahill *v.* Hilton, 106 N. Y. 512 ; 11 N. Y. State Rep. 26.

So this same rule was expressed in Fuller *v.* Jewett (80 N. Y. 53), where it is said that the duty of the master is relative, not absolute.   He is only bound to exercise due care to that end.

In the case of Jones *v.* N. Y. C. and H. R. R. R. Co. (28 Hun, 284), where the deceased was killed by a fall from a broken rung on a car, the doctrine is again stated.   And it may be noticed, that when that case was again before the court, in 28 Hun, 364 ; affirmed 92 N. Y. 628, the condition of the rung at a time previous to the accident was shown, that the jury might infer therefrom the negligence of the defendant.

Now, in this case, there is no evidence that the brace was off when the plaintiff mounted the car.   There is no evidence that it had become loosened before that time.   Still less is there evidence that there had been anything in its appearance to attract attention.   The brace is held to the

car by two bolts.   A conjecture might be made, that before the accident the bolts had become loose, or the nuts unscrewed, and that the sudden wrench given by plaintiff pulled the brace off.   But this would be mere conjecture. The mere fact that the next day it was found on the footboard, or even the inference that it came off at the time of the accident, is not enough to show defendant's negligence. How it happened that the next day the brace was found on the step, we cannot tell.   That may have happened from plaintiff's pulling the brake shaft over in his fall.

Or again, the brace may have become loosened on the way from Schenectady, for there is some evidence that all the cars were in order on the way.   At any rate, there is none to the contrary.   If this were so, then defendant would have had no notice of the defect, and there would have been no evidence of want of proper care to discover it.

The plaintiff urges that there were two men whose business it was to inspect the cars as they came in, and that such inspection was carelessly performed.   But the very circumstances show their duty was not to make a thorough examination of all parts of the car.   The train was to be distributed and, as this distribution was to be made, these two men looked at the cars to see if any defect was apparent which should cause them to be sent to the repair shop or to the freight yard.

The testimony is simply that King who is the foreman of the repair shop, having a shop in the freight yard, had two men to look over the cars, one on each side, to inspect the train as it comes into the yard.   How thorough an inspection is then to be made does not appear.   Whether that inspection was thorough or not, does not determine the question of defendant's negligence, because the question remains, what inspection ought to have been made, under the circumstances, of this particular part of the car?   We are not to assume that reasonable care requires that every part of a freight car should be inspected with such and

such frequency. How often reasonable care requires the brace of a brake shaft to be inspected is a matter upon which nothing is shown in the case. It may be a part of the machinery which seldom wears out or becomes loose, or it may be a part which frequently gets out of order. These and other considerations may enter into the question of negligence. To support his view the plaintiff cites the Vosburgh Case (94 N. Y. 374). That was the case of a bridge improperly constructed in the first place, where defects were obvious to a skilled inspector. The court said that it was not reasonable care to buy an unsafe and defective bridge, and not to have it inspected. There is no proof that this car was originally unsafe.

The plaintiff also cites Durkin *v.* Sharp (88 N. Y. 227). That was the case of injury arising from defect in a track. The court was asked by defendant to charge that it was not liable if the track had been inspected by competent inspectors, and adjudged good. The court refused. And this was held correct. To excuse defendant from paying damages as for an injury by a defect which had been proved, the defendant must show a careful inspection.

If the previous existence of a defective brace had been proved in this case and the defendant had sought to excuse itself on the ground of careful inspection, there would have been some analogy. But the defendant in this case insists that no defect has been shown to have existed for any time; still less for such a time as would charge defendant with notice of it.

And it must be noticed in regard to the matter of inspection that the duty must vary accordingly as the thing to be inspected is more or less liable to wear out and is more or less perilous, when worn, to the employees and others. Railroad companies make a partial inspection of wheels of passenger cars at every stopping place. No one would demand that they should inspect the whole car.

The brace which is claimed to have caused the accident

is not exposed to much strain or wear. It is the height of the car distant from the place on the brake shaft where the chain is wound. And, therefore, the strain of the brake must be less than it is on the stirrup.

Besides this, it is in full sight of the brakeman, just above his feet, and open to his observation. The plaintiff himself says that he saw this and the other parts of the brake machinery and saw no defect. The case of Bailey *v.* Rome, W. and O. R. R. Company (49 Hun, 377 ; 19 N. Y. State Rep. 656), it is quite similar to the present; except that in that case, the cause of the accident was proved beyond doubt. In that case the plaintiff was endeavoring to set a brake, when the brake shaft and handle came up in his hands and threw him from the car. It was proved that the pin in the bottom of the brake shaft was gone. But there was no evidence to show when it was broken or lost, or that defendant knew of its absence, or that there was any omission to inspect the car. The court held that there should have been a nonsuit.

We have so far considered this case on the supposition that the brace which held the brake shaft was loose, or perhaps off, when plaintiff took hold of the wheel, and that that circumstance caused his fall. But even this is not satisfactorily proved.

The plaintiff was not trying to set the brake. Hence, there would be no strain, or little strain, on the wheel from the pressure of the brake. He says he pulled on the wheel and it caught a little.

There is no evidence that looseness of the brace would have made the wheel catch. Then he pulled a little harder, and gave a jerk, turned it half way around, and it flew back and he got over-balanced, and the brake shaft went one side. Except the fact that the brake shaft went to one side, there is nothing that we discover in the circumstances which would be caused by the looseness of the brace. The plaintiff says that he does not know whether he put the

dog into the ratchet, and that, if he did not, the wheel would naturally go back when his hand slipped.

The plaintiff does not know how far the brake shaft went to one side. Now, as that brake shaft was fastened at the stirrup, under the car, and passed through the foot-board about three feet below the top of the car, the wheel at the top of the brake shaft could not move to one side, much more than the excess of the size of hole in the foot-board. over the size of the brake shaft. There is no proof how large the hole in the foot-board was. A witness says that it let the brake "wobble." But this hole was not intended to hold the brake shaft; that was done by the brace. So that the fact that the brake shaft would "wobble" in that hole, is no evidence of negligence.

The plaintiff says that the wheel flew back and threw him to the south; and it may be that his claim is that, just at that time, the brace became loose, and thus the wheel flew back and the brake shaft went to the inside, and his hand slipped and he fell. But even that would not account for the catching of the brake shaft which made it necessary for him to give the jerk, that seems to have had something to do with the unfortunate result.

If, however, the brake was off and lying on the foot-board when he mounted upon it, then it would seem to have been difficult for him not to see the defect.

We have thus far examined this case on the assumption that the jury found that plaintiff did not fall from car 3913. We have now to consider the correctness of finding.

It is not disputed that the car from which plaintiff fell was the second car from the engine, as the train came in from the freight yard from Schenectady; and that the first was a coal car. In distributing, the order was reversed, so that the coal car was last.

Chamberlain, a brakeman, had mounted the coal car and saw plaintiff fall. Half an hour afterwards he pointed out the car to Palmer, a brakeman. The next day, about 6 P. M.,

Palmer testified that he identified the car then standing on the Kelly track unloaded, having contained feed, and saw the brace was loose on the ratchet. He identified the car by the number, which he does not now remember, and by the words " broken track transfer," which, he says, were on this car and others. Lawrence, then a yardman, came up about the time of the accident, and was told which the car was from which plaintiff fell. It was next to the coal car. About forty-five minutes after he was by the Kelly track, and saw a car which he identified by its general appearance as that from which plaintiff fell. He saw a brakeman try the brake and it was loose. This constitutes the plaintiff's evidence on this point. On defendant's part Kelderhouse, the rear brakeman on the train, saw plaintiff fall, and states that the number of the car was 3913, and that the brake was in order. Gleason the conductor of the train, states that the number of the car was 3913, and produces his original report made the day of the accident, showing this number. McIntosh, the head brakeman of the train, testifies that the brakes of the first five cars were in good order, and that he left the three head brakes set, which would include the car from which plaintiff fell. Flood, a car repairer, testifies that he repaired 3913, and it was in good order July 14, 1883. Harmon, an assistant yard master, testifies that the car next to the coal car was marked " King." King testifies that he was foreman of car repairs; that he was at the yard the next morning. Car 3913 was on repair (on Barney) track, boarded with material for him ; that the brake was in good order. Cox, an inspector, testifies to the same as to this car, though he does not remember the number.

This is a brief statement of the testimony. It will be seen that Lawrence only identifies the car by general appearance ; Palmer by the number (now forgotten), and by marks which were common to this and other cars.

On the other hand the testimony and the record of the

conductor, Gleason, and the testimony of Kilderhouse, which is less valuable, establishes the number of the second car.   McIntosh proves that the brakes of the first five cars were in good order, and that, after getting into the yard, he left the three head brakes set.   Harmon testifies that the second car was marked King; and King finds car 3913 on the Barney track for him the next morning.

On the whole, we think that on this point of the identity of the car, the verdict is against the weight of evidence. On the first point discussed, we are of opinion that no negligence on the part of defendant was shown. .

Judgment and order reversed, new trial granted, costs to abide event.

INGALLS, J., concurs.

LANDON, J.—I concur, and add that the employee who makes inspection incurs the risks of the employment, to the extent of the danger resulting from the defects which his inspection is intended to detect and provide against.