CHARLES COPPINS, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty.

A railroad company owes its employes the duty of employing, so far as it can with reasonable care, only competent men in the management of its road; that is, men who can be relied upon to execute the rules of the master unless prevented by causes beyond their control.

The competency of a servant depends not alone upon physical or mental attributes, but upon the disposition with which he performs his duties.

Where a railroad company permits its employes to habitually disregard the safeguards provided to insure the safe running of its trains, this is a neglect of duty which the company owes to its other employes, as much as permitting the use of defective machinery.

In an action to recover damages for injuries received by plaintiff, alleged to have been caused by defendant's negligence, it appeared that a switchman was employed by defendant at a station on its road, whose duty it was, by the rules of the company, to see that the switches connected with the passenger tracks were locked and closed previous to the time of the passage of each train, and to be present until the train passed, and give a signal showing everything was right; that said switchman was habitually absent from his post and neglected to perform his duties, and, as the evidence tended to show, this was with the knowledge of defendant's division superintendent, and under circumstances charging defendant with knowledge thereof. A train upon which plaintiff was employed as a brakeman was derailed because of a misplaced switch, said switchman having opened it and left the yard without closing it a short time before the train was due, and plaintiff was injured. *Held,* the evidence justified a finding of negligence on the part of defendant in retaining the switchman in its employ after knowledge of his habitual neglect of duty; and that, although it appeared that the engineer of the train was negligent in not observing the target at the switch which showed it out of place and in running his train at a high rate of speed, this did not excuse defendant's negligence.

The switchman testified that he supposed he closed and locked the switch before he left the yard. It was claimed by defendant that if he had remained at his post and signalled the train he would have done so without examining the switch, relying upon the mistaken supposition that he had closed it, and so that the negligence complained of was not the proximate cause of the injury. *Held,* untenable; that the jury were justified in assuming that had the switchman remained in the yard he would have complied with the rules.

Reported below, 48 Hun, 292.

(Argued October 30, 1890; decided December 2, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 17, 1888, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial.

The action was brought to recover damages for injuries alleged to have been caused by defendant's negligence.

The plaintiff was a brakeman in the service of the defendant, and on the 10th day of May, 1880, was employed upon an express passenger train which was scheduled to pass the station at St. Johnsville at three minutes past five in the afternoon.

The train was derailed at that point on account of a misplaced switch, and the plaintiff received injuries for which he has recovered damages in this action. There were four tracks, numbered from north to south from one to four. The two south tracks were used for passenger trains, number two being the west bound track. The tracks were connected by cross-overs used to pass cars from one track to the other, and the cross-overs were connected with the main track by switches. Martin Schram was one of the men employed by defendant to shift these and other switches, of which there was a large number, in the St. Johnsville yard. On the day of the accident Schram opened the switch at track two to enable a work train to cross to track one, and neglected to close it, and before the express train was due left the yard and went to supper.

The express train came rapidly from the east; the engineer did not notice the misplaced switch until within 500 feet thereof, and was unable to stop the train in time to prevent its running upon the cross-over. The result was derailment and injuries to the plaintiff.

Further facts appear in the opinion.

*Wm. G. Tracy* for appellant. The alleged negligence of the defendant in failing to discharge the switchman Schram was not a proximate cause of the accident. (*Harvey* v. *Central*, 88 N. Y. 481; Patterson on Railway Law, § 312; *Searls* v. *M. R. Co.*, 101 N. Y. 661; *Fawcett* v. *R. Co.*, 24 W. Va. 755; *Pease* v. *C. & N. W. R. R. Co.*, 61 Wis. 163; *Bauler* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *Flike* v. *A. R. R. Co.*, 53 id. 549; *Chapman* v. *E. R. R. Co.*, 55 id. 579; *Hilts* v. *C. & G. T. R. Co.*, 55 Mich. 437; *O. & M. R. R. Co.* v. *Collarn*, 73 Ind. 261; *Stringham* v. *Hilton*, 111 N. Y. 516; *Coon* v. *D., L. & W. R. R. Co.*, 81 id. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 369; *Taylor* v. *City of Yonkers*, 105 id. 202; *Pittsburgh* v. *Ruby*, 38 Ind. 294; *Gilman* v. *E. R. R. Co.*, 10 Allen, 233; *Senior* v. *Ward*, 1 El. & Bl. 384.) The court, therefore, erred in refusing to nonsuit the

plaintiff upon the grounds that the negligence of the switch-man Schram, in absenting himself from the yard was not the proximate cause of the accident. (*Toomy* v. *R. R. Co.*, 3 C. B. [N. S.] 146; *Colton* v. *Wood*, 8 id. 565; *Bauler* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 366; *Henry* v. *S. I. R. R. Co.*, 81 id. 373; *McCarthy* v. *Clark*, 40 Penn. 399; *Chicago* v. *Mayor* 18 Ill. 349; *Tourbillot* v. *Renbrooke*, 11 Metc. 460; *Schuylkill* v. *Munson*, 14 Wall. 442; *Jewell* v. *Parr*, 13 C. B. 916; *Wheelton* v. *Hardy*, 8 El. & Bl. 226.) The court erred in refusing to nonsuit the plaintiff upon the grounds that the rule requiring switchmen to be present during their tour of duty had been modified. (*Hayes* v. *Bush*, 14 Hun, 407; *Kansas City* v. *Keir*, 41 Kan. 661.) The court erred in refusing to nonsuit the plaintiff upon the grounds that the defendant failed to learn of the violation of its rules through the negligence of a co-employe of the plaintiff. (*Slater* v. *Jewett*, 85 N. Y. 61; *Crispen* v. *Babbitt*, 81 id. 516; *Newbauer* v. *N. Y. & L. E. Co.*, 101 id. 607; *Loughlin* v. *State*, 105 id. 159.)

*Louis Marshall* for respondent. It was the duty of the defendant to employ a safe and competent switchman to operate its switches, and although Schram may have been competent when employed, he became careless and reckless in the discharge of his duties thereafter, and the defendant had either actual or constructive notice of such fact. Defendant thereby became chargeable with his negligence, and the plaintiff became relieved from the consequences thereof, he having no knowledge of the facts. (*Newell* v. *Ryan*, 40 Hun, 286; *Mann* v. *D. & H. C. Co.*, 91 N. Y. 500; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Flike* v. *B & A. R. R. Co.*, 53 id. 529; *W. R. Co.* v. *McDaniel*, 107 U. S. 454; Wood on Master & Servant [2d ed.], § 418; *Chapman* v. *E. R. Co.*, 55 N. Y. 579; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 356; *P., etc., R. Co.* v. *Ruby*, 38 Ind. 294; *H. & B. T. R. R. Co.* v. *Decker*, 82 Penn. St. 119; *Hilts* v. *C. & G. T. R. Co.*, 55 Mich. 437; 17 Am. & Eng. R. R. Cas. 628; *Gilman* v. *East-*

ern *R. Co.;* 10 Allen, 233 ; 13 id. 433 ; *Blake* v. *M. C. R. R. Co.,* 70 Me. 60 ; *C., etc., R. R. Co.* v. *Doyle,* 18 Kan. 58 ; *M., etc., R. R. Co.* v. *Smith,* 59 Ala. 245 ; *M. C. R. R. Co.* v. *Gilbert,* 46 Mich. 176 ; *T. M. R. R. Co.* v. *Whitmore,* 58 Tex. 276 ; 11 Am. & Eng. R. R. Cas. 195 ; *O. & M. R. Co.* v. *Collarn,* 73 Ind. 261 ; 3 Wood's Railway Law, 1476 ; *Sizer* v. *S. B. & N. Y. R. R. Co.,* 7 Lans. 67 ; *Lyons* v. *N. Y. C. & H. R. R. R. Co.,* 39 Hun, 385.) Whether Rickard, the engineer of the defendant's train, was also guilty of negligence in failing to observe the condition of the target as he approached the switch, is of no consequence, since the defendant's negligence in the respects already stated co-operated with him. (*Cone* v *D., L. & W. R. R. Co.,* 81 N. Y. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.,* 95 id. 552 ; *Pantzar* v. *T. F. I. M. Co.,* 99 id. 368 ; *Stringham* v. *Stewart,* 100 id. 316.) The charge was carefully framed to avoid the errors found by this court upon the former appeal, and in all other respects was verbatim the same charge which was presented to this court for review upon the former appeal. There were no errors committed therein, nor in the refusal of the defendant's requests. (*Ehrgott* v. *Mayor, etc.,* 96 N. Y. 278–283 ; *Lyons* v. *E. R. Co.,* 57 id. 490 ; *Sauter* v. *N. Y. C. & H. R. R. R. Co.,* 66 id. 50 ; *Walker* v. *E. R. Co.,* 63 Barb. 260 ; *Ransom* v. *N. Y. & E. R. R. Co.,* 15 N. Y. 415 ; *Quinn* v. *L. I. R. R. Co.,* 34 Hun, 331, 333 ; 105 N. Y. 643 ; *Vedder* v. *Fellows,* 20 id. 126 ; *Mann* v. *D. & H. C. Co.,* 91 id. 500 ; *Booth* v. *B. & A. R. R. Co.,* 73 id. 40 ; *Pantzar* v. *T. F. I. M. Co.,* 99 id. 368.) None of the exceptions taken by the appellant to the admission and exclusion of evidence are tenable. (*Hughes* v. *N. Y. C. & H. R. R. R. Co.,* 98 N. Y. 641 ; *Ehrgott* v. *Mayor, etc.,* 96 id. 277 ; *Crouse* v. *S. C. & N. Y. R. R. Co.,* 32 Hun, 497 ; 97 N. Y. 631.)

Brown, J. If the evidence in this case justifies the conclusion that the engineer of the passenger train was negligent in not observing the target at the misplaced switch, or in running his train at a high rate of speed past the station in the

absence of signals that the track was safe, that fact of itself is not available as a defense, if negligence was established on the part of the defendant, as the law is too well settled upon principle and authority to be now questioned; that negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 552; *Stringham* v. *Stewart*, 100 id. 516.)

We come, therefore, to the consideration of the question of defendant's negligence, and this involves an inquiry into the rules that had been adopted by defendant to insure the safe passage of trains through the St. Johnsville yard, and over the switches in question, and whether the violation of these rules in this particular instance can be charged against the defendant as an act of negligence on its part.

The rules required that a train should not cross the passenger tracks within twenty minutes immediately preceding the arrival of a passenger train, and during that time and until the passenger train has passed the switches connecting with the tracks on which the train was running were to be closed and locked.

Schram and one Fenton were employed in the yard as switchmen, and at the time of the accident Schram's hours of service were from midday to midnight.

It was the duty of these men to open and set the switches for trains crossing the tracks, and to see that they were closed and locked previous to the arrival of trains on the main tracks.

Other men about the yard had keys to the switches, and were accustomed to open and operate them when Schram and Fenton were engaged elsewhere about the yard. We are concerned, however, only with the duties of these men, as to passenger trains that did not stop at St. Johnsville, and it is no importance that other duties about the yard may occasionally have called them away from the switches on the arrival of other trains.

As to the trains that did not stop, the evidence of the division superintendent was that it was the switchman's duty to signal those trains.   The safety signals were a white flag by day and a white light by night, and the danger signal a red flag in the day-time and a red light at night.

Obviously, a proper performance of this duty included an investigation into the condition of the track and switch to ascertain the fact which was communicated by the signal to the engineer in charge of the approaching train, and the usual manner of executing the rule was thus testified to by Schram : "I would go down to the switch and see if it was all right, about ten minutes before the arrival of the train, and then return up toward the depot at the highway crossing and display my signal to the engineer from that locality.   I would look over the switches to see they were all right, so as to give a proper signal ; then I would wait until the train came into sight, and show a signal, put out a white flag, or a red one if it wasn't right."

Upon the day of the accident, Schram left the yard ten minutes before the train was due and went to his supper. The examination of the switches was not made by anyone, and no flag signal was displayed.

That this was negligence on the part of Schram is not disputed, but it imposed no liability upon the defendant unless the act can be attributed to it.   The plaintiff seeks to so charge it by proof that Schram was in the habit of frequently neglecting to be at his post and signal passenger trains, and was in the habit of frequently leaving the yard and going to his supper about the time the train in question was due at St. Johnsville, and that his habits in that respect were known, or ought with reasonable care and attention to have been known, to defendant.

If the evidence justified this conclusion, the defendant's negligence was established.   No distinction exists in principle between permitting the use of defective machinery and permitting employes to habitually disregard the safeguards that have been provided to insure the safe running and operation of trains.

The defendant's duty to the plaintiff, so far as reasonable care would accomplish it, was to employ only competent men in the management of its road. A competent man is a reliable man; one who may be relied upon to execute the rules of the master, unless prevented by causes beyond his own control. Hence, incompetency exists not alone in physical or mental attributes, but in the disposition with which a servant performs his duties. If he habitually neglects these duties, he becomes unreliable, and although he may be physically and mentally able to do well all that is required of him, his disposition toward his work and toward the general safety of the work of his employer and to his fellow-servants makes him an incompetent man.

We are of the opinion that the evidence in this case justified the inference that Schram was in the habit of leaving his post of duty to go to his meals at times when his presence there was demanded to insure the safe operation of the road. With reference to the train in question. his own evidence showed that four or five times a month he was absent when the train passed, and at such times no signal was displayed. He testified that he knew he had no right to go away from the yard without signaling the train when it went through, and that it was his business to be there whether the train was late or on time. This disregard of his duties was known to all the employes about the yard and to the engineer and fire man on the train in question, and it was not an uncommon thing for the train to pass when no signals were displayed.

It was known to Edwards, Schram's immediate superior, but he testified that he never had reported it to the division superintendent, who alone had the power to remove Schram. The evidence, however, was ample to justify the inference that the defendant should have known of it, and with proper diligence could have ascertained it. There was no secrecy about Schram's habits in this respect, and the slighest attention to the condition of affairs about the yard in the morning and evening would have disclosed the fact that he frequently left his post at those hours. And we are of the opinion that

there was evidence from which the jury could find that Major Priest, the division superintendent, had actual knowledge of the fact.

It appeared from Schram's testimony that Priest frequently came into the yard when he was at breakfast, and it was not an improper inference therefrom that he should have known of Schram's neglect of his duties.

The request to the court to charge was not in reference to Priest's knowledge of his absence at the hour of the day when the accident happened, but as to his knowledge of the violation of the rule which required his presence in the yard during the hours of service.

The court did charge as to this that there was no direct evidence that Priest knew of it, but it refused to charge that there was no proof upon which the jury could find it at all. And this refusal for the reason already stated was not erroneous. We are of the opinion, therefore, that the evidence justified the conclusion that the defendant was negligent in retaining Schram in its employ after its knowledge of his customary neglect of duty. But the appellant claims that such neglect was not a proximate cause of the accident, and the argument is that inasmuch as Schram had after the passage of the work train misplaced the switch, but believed that he had closed and locked it so that trains could pass west on the main track, that it does not follow that had he remained in the yard, he would have again examined the track.

In other words, if he had remained and signalled the train, he would have done so without an examination of the switch, relying upon his mistaken notion that he had already closed and locked it; and also, that as it appeared in evidence that Schram, on some occasions, failed to signal the train in question, because he was engaged elsewhere in the yard; that it could not be assumed that such would not have been the case on the occasion of the accident.

We are of the opinion, however, that the jury were warranted in assuming that had Schram remained in the yard he would have complied with the rule, and performed his duties

in reference to signaling the train. It appeared that the work train had crossed the main track about half an hour before the passenger train was due, and after the passage of that train, Schram omitted to close and lock the switch.

If he had remained in the yard, his duty would have been to have examined the switches again before the passenger train arrived, and before his signal was displayed, to see that they were properly set. The presumption that he would have done so must prevail. Here was an accident caused by the failure of a servant to perform a particular duty because of his absence from his post. We cannot assume that had he been at the yard, he would have neglected that which he was there to perform.

But the verdict of the jury does not depend upon any such refinement of argument nor the defendant's liability rest upon the fact whether Schram might or might not have discerned the open switch had he remained in the yard; but, upon the question whether defendant was negligent in retaining Schram in its employment after knowledge that he frequently neglected his duty.

This was a fact, as was the question whether Schram's habit in leaving the switch unattended, and going to his supper, was negligence.

There was evidence to justify the jury's conclusion upon both questions, and it was for them to say whether the negligence of the defendant so established was the cause of the accident.

We find no error in the record, and the judgment should be affirmed, with costs.

All concur, except FOLLETT, Ch. J., and HAIGHT, J., not sitting.

Judgment affirmed.