VAN TASSEL *v*. NEW YORK, L. E. & W. R. CO.

*(Common Pleas of New York City and County, General Term. November 7, 1892.)*

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—REASONABLE PRECAUTIONS.
   Whether rules reasonably sufficient to secure safe appliances for its laborers were promulgated by a railway company, and whether supervision reasonably sufficient to enforce them was exercised, thereby freeing the railway from its responsibility for injuries resulting to laborers from unsafe appliances, are questions for the jury.

**2. SAME.**

The fact that a railway has repair shops on its line does not free it from liability for injuries received by a brakeman due to a defective brake step, when it does not appear that the car had ever been at such shops or examined for repair anywhere.

**3. SAME.**

Where a brake step, although appearing sound from above, is so cracked that the crack is plainly visible from below, and a brakeman stepping on it from above is injured by its giving way, the crack being weatherworn, the jury is justified in finding that the defect had existed long enough for the company to discover and repair it, and that there was negligence in failing to do so.

**4. SAME—PROBABILITY OF INJURY FROM DEFECTIVE APPLIANCE.**

Where a brakeman injured by the giving way of a defective brake step admits that it might have been used a hundred times with safety, since this would depend on the way the user's weight might bear on the step, the question whether it was reasonably safe is for the jury.

**5. SAME—RISKS OF EMPLOYMENT—BRAKEMAN ON A FREIGHT TRAIN.**

A brakeman on a freight train does not assume the risk of neglect by the railway company to secure safe brake steps on its cars.

**6. SAME—CONTRIBUTORY NEGLIGENCE.**

Whether a brakeman ordered by a conductor to couple a freight car, and injured by the giving way of the brake step while obeying the order, is guilty of contributory negligence in not examining the step before using it, is a question for the jury.

**7. EVIDENCE—IDENTITY OF RAILWAY CAR—CONDUCTOR'S REPORT.**

Proof that a car answering the description given by the plaintiff who alleges injury by a defective brake step was present at the place and time of the alleged injury, and had no brake step, does not bar recovery, when the only proof of the car's identity is the conductor's report, to the accuracy of which neither he nor the baggage master is willing to swear.

**8. SAME.**

Where a conductor and baggage master admit that their report was often made up from information received from others, the presumption of performance of duty by them is overcome, and the jury is not bound to credit the report. *Hotis v. Railroad Co.*, (Sup.) 6 N. Y. Supp. 605, distinguished.

**9. SAME—CONTRADICTING WITNESS—UNCERTAINTY AS TO DATE.**

Testimony by a bystander that he saw some one other than the plaintiff couple a stock car, the date not being sworn to, does not contradict the plaintiff's statement that on a certain day he at that place coupled a stock car, and was injured in so doing.

**10. SAME—RECOLLECTION OF CONVERSATION.**

The recollection of a train dispatcher that, some years previously, plaintiff, after the date of the alleged injury for which his action is brought, applied for easier work, on the ground that he had been injured at a place and in a manner different from that alleged, together with a denial thereof by plaintiff, does not compel the jury to discredit plaintiff's story.

**11. SAME—CONTRADICTING TESTIMONY TO COLLATERAL MATTER ON CROSS-EXAMINATION.**

In an action against a railway company for a personal injury, a physician testified for defendant that before the alleged injury he examined the plaintiff and found him to be in a condition which with reasonable certainty would have resulted in the disabilities attributed to the injury, and that he was sure of the date because he had entered it on his books at the time; on cross-examination he stated that he kept a record of his consultations in chronological order. A handwriting expert thereafter testified that in his opinion all the entries in the physician's record purporting to be of different dates were made at the same time. The competency of the expert was not questioned. *Held*, that this was admissible as going to disprove the alleged consultation, and not in violation of the rule that a party bringing out evidence as to collateral matter on cross-examination cannot thereafter contradict it. *Galdolfo v. Appleton*, 40 N. Y. 533, distinguished.

Appeal from special term.

Action by John Van Tassel against the New York, Lake Erie & Western Railroad Company for injuries alleged to have been sustained by the plaintiff, a brakeman in defendant's employ, by reason of the defective condition of a brake step, the use of which he claimed was essential to the operation of the brake attached to defendant's car. Defendant appeals from a judgment for the plaintiff entered upon the verdict of a jury, and from an order denying defendant's motion for a new trial. Affirmed.

Argued before DALY, C. J., and BISCHOFF, J.

*Buchanan & Steele,* (*Charles Steele,* of counsel,) for appellant.   *Smith & Bowman,* (*Artemas B. Smith,* of counsel,) for respondent.

BISCHOFF, J.   That plaintiff sustained injuries of the character claimed by him, and that in consequence of such injuries his health and physical condition were greatly and permanently impaired, are facts, which, upon the testimony of the physicians who were examined as witnesses on the trial, were left in no manner of doubt.   The facts, also, relating to the accident, assuming it to have occurred as testified to by plaintiff, fully justified a finding of defendant's negligence by the jury.   It appeared from plaintiff's testimony that he was a brakeman in the employ of defendant, and attached as such to a train, which, on August 22, 1888, proceeded to take a stock or freight car, laden with sheep, from Greycourt to Newburgh; that the brake of this car was constructed with a brake step, which was located about 18 inches below the roof of the car, and which was attached to the end of the car by iron braces; that the brake staff passed through the step, attached to which was a "dog" or "catch," which worked in connection with a "ratchet" wheel on the brake staff; that the "dog" was worked with the brakeman's foot, and that he had for that purpose to stand with one foot on the step while operating the brake, so that he could push the "dog" against the "ratchet" wheel after the brake was wound up, and thus hold it in position.   It further appeared that the board which formed the foot rest of the brake step had, from exposure to the elements, become defective, in that it had sprung lengthwise through the middle, the two parts, however, still adhering at, and a little below, the surface, so that the defective condition of the board could have been detected upon inspection from below, but was not apparent on its surface. It was a part of plaintiff's duty to obey the instructions of the conductor of his train, and having been directed by the latter, at Greycourt, to couple the car to the train, he proceeded to do so.   The car had to be hauled some distance to the train by a "pusher" engine employed for that purpose, and having coupled the car to this engine, plaintiff mounted the roof of the car, intending to unfasten the brake, which, he says, he believed to be set, at the time.   From the roof of the car he glanced down on the brake step, noticed nothing unusual in the appearance of it, stepped upon the foot rest, which separated at the point where it had been weakened as hereinbefore mentioned, and the weight of his body caused the separated part of the board upon which it directly bore to break, whereby he was precipitated astraddle of the bumper of the engine, and in this manner sustained the injuries complained of.

It was defendant's duty to maintain the brake and its appliances in a condition fit and suitable for the purposes of their use (*Wright* v. *Railroad Co.,* 25 N. Y. 562; *Laning* v. *Railroad Co.,* 49 N. Y. 521; *Besel* v. *Railroad Co.,* 70 N. Y. 171; *Kirkpatrick* v. *Railroad Co.,* 79 N. Y. 240; *Burke* v. *Witherbee,* 98 N. Y. 562; *Pantzar* v. *Mining Co.,* 99 N. Y. 368, 2 N. E. Rep. 24; *Fredenburg* v. *Railway Co.,* 114 N. Y. 582, 21 N. E. Rep. 1049) by the exercise of a reasonable degree of care and diligence to discover such defects as arise from the want of proper repair, (*Probst* v. *Delamater,* 100 N. Y. 266, 3 N. E. Rep. 184; *Fuller* v. *Jewett,* 80 N. Y. 46; *Painton* v. *Railroad Co.,* 83 N. Y. 7; *Ellis* v. *Railroad Co.,* 95 N. Y. 546;) nor could it escape responsibility for the nonperformance, or the negligent performance, of this duty, by delegating it to others, (*Benzing* v. *Steinway,* 101 N. Y. 547, 5 N. E. Rep. 449; *Bushby* v. *Railroad Co.,* 107 N. Y. 375, 14 N. E. Rep. 407; *Coppins* v. *Railroad Co.,* 122 N. Y. 557, 25 N. E. Rep. 915.)   A railroad company, however, may perform its duty as master in such respect by adopting and promulgating a system of rules and regulations intended for the inspection and repairing of its cars, engines, switches, etc., to guard against accidents, (*Byrnes* v. *Railroad Co.,* 113 N. Y. 251, 21 N. E. Rep.

50; *McGovern* v. *Railroad Co.*, 123 N. Y. 280, 25 N. E. Rep. 373; *Ford* v. *Railway Co.*, 124 N. Y. 493, 26 N. E. Rep. 1101; *Corcoran* v. *Railroad Co.*, 126 N. Y. 673, 27 N. E. Rep. 1022;) the employment of competent servants to make these inspections and repairs; and the exercise of such a supervision over its employes as may be reasonably necessary to enforce the observance of its rules and regulations, (*Whittaker* v. *Canal Co.*, 126 N. Y. 544, 27 N. E. Rep. 1042.) Whether or not the rules promulgated are reasonably sufficient to insure the safety of its servants, if observed, and whether or not a reasonably sufficient supervision was exercised to enforce the observance of the rules, are questions of fact which must be determined by the jury from the evidence. *Abel* v. *Canal Co.*, 128 N. Y. 662, 28 N. E. Rep. 663.

On the trial defendant's efforts were aimed to show that the stock car which plaintiff coupled to the engine at Greycourt was one known as, and marked, "N. Y. P. & O. 8,007," and had, but about 15 minutes before, been brought to Greycourt by a train from Jersey City; that car "N. Y. P. & O. 8007" was not provided with a brake step; that the brake thereof was of an essentially different construction; and that a brake step thereon was unnecessary. Incidentally, it appeared from the evidence for the defense that the defendant maintained a station at Jersey City, and another at Newburgh, where such of its cars as came there were inspected, and, when necessary, repaired; but as the jury have discredited defendant's claim that the car which plaintiff coupled to the engine was the car known as "N. Y. P. & O. 8,007," it is, in the absence of evidence tending to show that all of defendant's cars, in the prosecution of its business, necessarily arrived at Jersey City or Newburgh at frequent intervals, thus affording opportunity for inspection and repair, absurd to speak of these two stations as a "system." The particular car, in the use of the brake of which, the jury say, plaintiff was injured, was at Greycourt. How long it had been there, and from whence it came, or that it ever had been, or if so, how recently, at either Jersey City or Newburgh, does not appear. It was not shown that there was a repair station at Greycourt, or that any person was there employed for repairing purposes, or that the car was ever inspected or examined there, or anywhere else, by anybody, before the accident, to ascertain if it needed repair. It is apparent that, with the rejection of defendant's claim that the car coupled to the engine was car "N. Y. P. & O. 8,007," all evidence of efforts at Jersey City and Newburgh to avoid accidents arising from the want of repair became at once irrelevant, and would not fit to the case of a car which was not shown ever to have been at either of those places at any time before the accident. Hence the jury consistently, also, found that defendant had, with reference to the car coupled to the engine by the plaintiff, omitted to use reasonable precaution to avoid accident from the want of repair.

Appellant urges that there is no evidence from which the jury were authorized to infer that defendant was negligent, and counsel cites *De Graff* v. *Railroad Co.*, 76 N. Y. 128, which is to the effect that the breaking of a piece of machinery may reasonably lead to the conclusion that the break was due to a defect therein, but that the fact merely that the machinery was defective does not warrant an assumption that the master was negligent in not discovering the defect. Unquestionably the master may not be held responsible without proof of negligence on his part, and his negligence will never be presumed, (*Dobbins* v *Brown*, 119 N. Y. 188, 23 N. E. Rep. 537;) but the fact of his negligence may appear from the circumstances of the accident or the nature of the defect. In the *De Graff Case* it appeared that plaintiff was a brakeman, and that while applying the brake the chain broke, whereby he was thrown from the car and injured, but the jury were not informed of the nature of the defect in the chain, or what it was that caused the chain to part asunder    In the case at bar, however, plaintiff's testimony shows that the cause of the break in the foot rest of the brake step was a crack or opening

running lengthwise through the middle, and extending through the thickness of the board to very nearly the surface; that the crack must have been plainly visible from below; and that it was not of recent origin, because the upper portion of the broken edges where the board parted in two was fresh, and had the appearance of a recent break, while the remaining portion of the same edges was blackened and weatherbeaten, indicating that it had been exposed to the elements for some time past.   The failure to discover and repair this cause of the break is the negligence complained of, (*Gottlieb* v. *Railroad Co.*, 100 N. Y. 462, 3 N. E. Rep. 344;) and the circumstances of the case under consideration are no less convincing in that respect than were those in *Jones* v. *Railroad Co.*, 28 Hun, 364, affirmed 92 N. Y. 628, where it was held that the appearance of the iron rung of a ladder used in connection with a freight car, and from which plaintiff's intestate had fallen, bent and dented, with the broken ends partly bright, as though recent, and partly rusty, as though old, justified the jury in assuming that the defect had existed for a sufficient length of time to have enabled defendant to discover and repair it, had the defendant exercised reasonable diligence to ascertain the condition of the ladder.

Appellant further contends that there was affirmative evidence that the brake step was reasonably safe, from plaintiff's admission that it might have been used by him, or others, a hundred times without causing it to break, and that to supply one not absolutely but reasonably safe, only, was the extent of defendant's duty.   *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286; *Stringham* v. *Hilton*, 111 N. Y. 188, 18 N. E. Rep. 870.   We understand this admission to mean no more than that it was the witness' opinion that, in the use of the step, the weight of the body did not uniformly bear upon the weakest point of the foot rest, and that it was for that reason not inpossible to use the step a great many times without causing a break at that point, and so evidently the jury, who did not share this opinion, interpreted it.   Bearing in mind, therefore, that the reasonable safety of an appliance must be determined with reference to its use, it was still a question for the jury whether or not, in view of the fact that the defective condition of the brake step might cause it to break at any time when in use, it was reasonably safe, and with the jury's finding that it was not we cannot interfere.

Neither can it be successfully urged that, in entering upon his employment as brakeman for the defendant, the plaintiff accepted, as incidental to the service, the risk of injuries resulting from defendant's neglect to exercise reasonable diligence to ascertain and repair defects in appliances used by plaintiff in the performance of his duties.   The risks of injury which the servant assumes are those which are obvious and within his reasonable apprehension, (*Gibson* v. *Railway Co.*, 63 N. Y. 449; *Shaw* v. *Sheldon*, 103 N. Y. 667, 9 N. E. Rep. 183; *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286; *Appel* v. *Railway Co.*, 111 N. Y. 550, 19 N. E. Rep. 93; *McGovern* v. *Railroad Co.*, 123 N. Y. 280, 25 N. E. Rep. 373;) not such as are the result of the nonperformance, or the negligent performance, of a duty owing from the master, (*Crispin* v. *Babbitt*, 81 N. Y. 516; *Pantzar* v. *Mining Co.*, 99 N. Y. 368, 2 N. E. Rep. 24;) and the master will not be permitted to avail himself of the servant's assent to assume all obvious and incidental risks of injury in the service until he has himself discharged the duty of using and maintaining all reasonable precaution to avoid injury to the servant, (*Dana* v. *Railroad Co.*, 92 N. Y. 639; *Hudson* v. *Steamship Co.*, 110 N. Y. 625, 17 N. E. Rep. 342.)

Plaintiff was not guilty of contributory negligence.   Though he might have discovered the defective condition of the brake step had he examined before attempting to use it, he was justified, from the fact that the car which he was directed to couple was at the time in actual use, in assuming that it was in fit condition, and that the defendant had performed its duty of keep-

ing the car, with all its appliances, in proper repair. *Bushby* v. *Railroad Co.*, 107 N. Y. 375, 14 N. E. Rep. 407. At any rate, the fact that plaintiff was directed by his superior to couple the car made the question of his contributory negligence, because of his omission to examine the brake step before attempting its use, one to be determined by the jury upon all the surrounding circumstances. *Kain* v. *Smith*, 89 N. Y. 375.

Appellant's counsel further urge as ground for reversal that the verdict is against the evidence and the weight of the evidence, because it was conclusively shown that the car which plaintiff coupled to the train at Greycourt was the car marked and known as "N. Y. P. & O. 8,007," which was not provided with a brake step, from which it follows that the accident narrated by the plaintiff did not occur. It appeared in evidence for the defense, without contradiction, that the defendant's rules required its conductors to report the arrival and departure of its trains at each station, with a description of the several cars there taken on or left, and that the conductor of the train by which car "N. Y. P. & O. 8,007" arrived at Greycourt from Jersey City had made such a report. The accuracy of the report was testified to by Wandle, the conductor, and Quackenbush, the flagman, in whose handwriting it was made, and the evidence may be accepted as conclusive of the arrival of car "N. Y. P. & O. 8,007" at Greycourt on the day of the accident, and about 15 minutes before the departure of the train, to which plaintiff was attached, from Greycourt to Newburgh. It is equally conclusive that car "N. Y. P. & O. 8,007" was laden with sheep, and that the construction of its brake was such as to make a brake step superfluous, and that it was not provided with any. It does not follow from such facts, however, that car "N. Y. P. & O. 8,007" was the car which plaintiff coupled to and which was taken by the train, to which he was attached, from Greycourt to Newburgh, and it is manifest that, if plaintiff's story that the last-mentioned car was provided with a brake step is correct, it could not have been the car "N. Y. P. & O. 8,007." Plaintiff's story is not inherently improbable. We are not authorized to assume that the car load of sheep was not transferred at Greycourt from car "N. Y. P. & O. 8,007" to another, or that there were not two or more cars laden with sheep at Greycourt, or that the car which was dispatched by plaintiff's train had not arrived at Greycourt by a train other than that of which Wandle was the conductor. To prove the identity of the car coupled to plaintiff's train with car "N. Y. P. & O. 8,007," defendant offered in evidence the report of King, the conductor of the train running from Greycourt to Newburgh, which was in the handwriting of William H. Van Tassel, plaintiff's brother, and the baggage master on the train. From this last report it appears that the only stock car taken from Greycourt to Newburgh was car "N. Y. P. & O. 8,007," but both King and William H. Van Tassel refused to swear to its accuracy, or to the fact that the description of the car was made from their personal observation of its number or initials, and whatever benefit the defendant might otherwise have derived from the presumption of the performance of duty (*Barker* v. *Railroad Co.*, 24 N. Y. 599; *Steamship Co.* v. *Otis*, 100 N. Y. 446, 3 N. E. Rep. 485; *Turner* v. *Kouwenhoven*, 100 N. Y. 115, 2 N. E. Rep. 637; *Coppins* v. *Railroad Co.*, 122 N. Y. 557, 25 N. E. Rep. 915; 1 Greenl. Ev. § 40) was overcome by its admission that the report may have been made up from the waybill, or the train book, and that the entries in the train book and reports were frequently made by them upon information received from others, and not upon their personal knowledge of their accuracy. Thus the success of the defense hinged entirely upon the degree of credit which the jury saw fit to attach to the last-mentioned report, and, with its accuracy impeached by the admissions of King and William H. Van Tassel, we cannot say that the jury were bound to credit it.

To contradict plaintiff's statement that on August 22, 1888, he fell from a stock car which he had just coupled to the "pusher" engine, defendant called

John E. Tibbett; but a careful scrutiny of the latter's testimony must demonstrate that it is not in conflict with that of the plaintiff concerning the happening of the accident. Tibbett merely states, with reference to the accident, that on one occasion, which he would not say was on the 22d of August, the day plaintiff says he was injured, he was at Greycourt, and saw a person other than the plaintiff couple a stock car to the "pusher" engine; that all this time witness and the plaintiff were standing near the train on which plaintiff was employed as a brakeman; and that the stock car was coupled to the train by plaintiff, who, on that occasion, did not meet with any accident; and that he, the witness, did not see plaintiff meet with an accident on any other occasion. It is not at all unlikely that at some time Tibbett may have been at Greycourt, and witnessed the coupling of a stock car.as he described, but, unless it also appears that this was the coupling to which plaintiff referred, the two statements cannot be said to be in conflict with, or contradictory of, each other.

Next, defendant called for the purpose of contradicting plaintiff one Charles W. Jones, its train dispatcher at Newburgh, who testified that in September, 1888, some time after the accident, plaintiff applied to him to be assigned to less arduous work, giving as a reason for his application that he had sustained an injury some time previous while lifting a barrel at Central Valley, but it may well be that the jury, upon plaintiff's denial of ever having attributed his injuries to the cause mentioned, refused to discredit him upon such hazardous testimony as the witness' accurate recollection of the particulars of a casual conversation.

For the purposes of still further contradicting the plaintiff, defendant called James L. Lente, a physician, who testified that, about 16 months before the alleged accident, plaintiff had called upon and consulted him professionally; that on that occasion he had inspected plaintiff's person, and noticed the presence of a rupture in the groin, as well as other symptoms of disease which, with reasonable certainty, would eventually lead to the physical condition in which plaintiff was shown to be on the trial; and that he had recorded the fact of the consultation, with the result of his inspection, on the day it was made, in a book kept by him, and in which were recorded his consultations with patients in chronological order. But Dr. Lente's testimony was itself impeached by that of Daniel T. Ames, a witness for the plaintiff, who, upon the book being exhibited to him, testified to his opinion as an expert in handwriting that all of the entries in the book, consisting of about 34 pages, were made on one and the same occasion, and not on the several dates on which the entries respectively purported to have been made; that the handwriting indicated that it was all made under the same conditions and surroundings; and that it was barely possible for any person to write thus on two or more distinct occasions.

For all of the reasons above mentioned, we are of the opinion that the several motions to dismiss the complaint, and the motion for a new trial on the minutes, were properly denied. The case to which counsel for defendant refers us (Hotis v. Railroad Co., [Sup.] 6 N. Y. Supp. 605) differs from the present in that, in the Hotis Case, the evidence of the identity of the car upon which plaintiff claimed to have been injured, with the one shown to have been in good order, was complete, and the preponderance of the evidence was in favor of the identity of the cars. Hence there the verdict for the plaintiff was properly set aside.

The exceptions urged by counsel for appellant to the admission of the testimony of Ames, an expert in handwriting, to the effect that the alleged record of Dr. Lente's consultation with plaintiff, and his inspection of plaintiff's person, were not made when Dr. Lente said they were, and when the record itself purported to have been made, have been examined by us. These exceptions were not based upon any objection to Ames' competency as an expert, or the competency of the opinions of experts in handwriting concerning

the subject-matter of the inquiry, but wholly upon the objection that as Dr. Lente, when examined as a witness for the defendant, had only been asked concerning the entry in the record of the fact of plaintiff's visit, his testimony on cross-examination, with respect to the entries of the visits of other patients, was concerning collateral matter, and conclusive upon the plaintiff, under the rule laid down in *Galdolfo* v. *Appleton*, 40 N. Y. 533, that a party may not contradict a witness concerning collateral matter brought out by the party seeking to contradict. We do not, however, agree with appellant's counsel that the testimony concerning the entries of consultations by Dr. Lente with persons other than plaintiff was of collateral matter. On his direct examination Dr. Lente had testified that his consultation with plaintiff occurred on April 24, 1887, and that he was enabled to fix the date with certainty, because he had made a record of the consultation on the day it occurred. Having itself brought out the fact of this alleged record of Dr. Lente's consultation with plaintiff, defendant could not thereafter urge its immateriality or irrelevancy, and prevent cross-examination concerning it. On cross-examination it appeared that Dr. Lente claimed to have made the record of his consultation with plaintiff in a book regularly kept for such purposes, and in which he entered the fact of his consultations with patients in chronological order, each on the day of its occurrence. Ames' testimony, therefore, that the entries concerning consultations purporting to have taken place before the one with plaintiff, and those purporting to have been made on subsequent dates, were in fact all made on one and the same occasion, had the effect of contradicting Dr. Lente's statement, on his direct examination, that he made the entry concerning his consultation with plaintiff on April 24, 1887, and so tended to disprove the alleged consultation altogether, or at least the alleged substance of it, as to which Dr. Lente had testified that he relied for his recollection to some extent upon the record. *Kouba* v. *Horacek*, (Sup.) 6 N. Y. Supp. 250. None of the other exceptions which appear in the case require us to reverse the judgment. Judgment affirmed, with costs.