(10 Misc. Rep. 734.)

### MILLIE v. MANHATTAN RY. CO.

(Common Pleas of New York City and County, General Term. January 7, 1895.)

1. NEGLIGENCE—DANGEROUS PREMISES—RES IPSA LOQUITUR.

The mere fact that the rubber covering on the stairs of defendant's elevated railroad station was out of repair, and caused plaintiff to fall, without any evidence that such condition existed before the accident, is not sufficient to charge defendant with negligence, and therefore the maxim "res ipsa loquitur" does not apply. 25 N. Y. Supp. 753, affirmed.

2. SAME—EVIDENCE.

In an action for injuries caused by falling down the stairs of defendant's elevated railroad station, plaintiff's evidence merely showed that her fall was caused by catching her foot on one of the steps, and that afterwards the rubber covering on one of the steps was observed to be loose; but no one saw her trip on the loose cover, and there was no evidence as to its condition before the accident. *Held*, that the complaint was properly dismissed for want of proof of negligence. 25 N. Y. Supp. 753, affirmed.

Action by Lena Millie against the Manhattan Railway Company. The complaint was dismissed at the trial (25 N. Y. Supp. 753), and plaintiff moves for a new trial on exceptions ordered to be heard at general term in the first instance. Denied.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Roger Foster, for plaintiff.
Edward B. Thomas, for defendant.

BOOKSTAVER, J. This action was brought to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, whereby plaintiff was caused to fall down the stairs of the station at Fifty-Ninth street and Ninth avenue, receiving, as is claimed, permanent injury. The action was twice tried before the same justice, who on the first trial submitted certain questions of fact to the jury, who were unable to agree upon a verdict. Upon the second trial the justice dismissed the complaint, directing the exceptions to be heard at general term in the first instance. The learned judge who tried the case, on dismissing the complaint, delivered an exhaustive opinion on the main questions involved in the action, and we do not think it is necessary to add anything to what he has there so well said upon those points. But upon this motion the plaintiff has argued that the learned judge overlooked the fact that two nails, claimed to be from the stairway, were offered in evidence, and that the condition of these nails was such as to warrant the court and jury in finding that the rubber on the stairway had been in a dangerous condition for a sufficient length of time to impute notice thereof to the defendant. The first difficulty with this contention is that there is absolutely no proof that these two nails were of the size and character of those generally employed in fastening the rubber to the stairway. The witness producing these nails testified that he found one of them on the step below the loose rubber, the day after the accident, and the other he found standing upright, and sticking in the rubber at the loose place. The stairways of the elevated railroad are so frequently swept, in order to keep them passably clean, that it seems almost impossible that a nail such as this could have lain upon those steps undisturbed from 12 o'clock noon on one day to 7 or 8 o'clock on the morning of the following day; and the constant use of the stairway by passengers ascending and descending almost precludes the possibility of the nail sticking up in the rubber, as claimed by the witness, to have remained there for any length of time without being knocked out. On the argument, plaintiff's counsel claimed that these nails were worn on the top, and were very rusty. But there is no proof in the case as presented as to how rusty these nails were at the time they were secured by the witness. Nor is it shown by the evidence that rusty nails are more likely to come out of wood than those which are not. Nor is there any evidence that nails, if driven in green wood, would not rust while securely in their place. Nor is there proof that nails securely driven home, even in dry wood, where such wood is exposed to the elements, will not rust while in that position. And we are

therefore of opinion that this circumstance adds nothing to the facts from which the jury could by fair inference conclude that the rubber had been out of repair for a sufficient length of time to impute notice to the defendant. This case is not at all analogous to Van Tassell v. Railroad Co., 1 Misc. Rep. 299, 20 N. Y. Supp. 708, where the step causing the injury was fully identified, and the fracture showed by the coloring of the edges that it had been in a dangerous condition for a considerable period of time. Nor is it like Jones v. Railroad Co., 28 Hun, 364, affirmed 92 N. Y. 628, where it was held that the appearance of the iron rung of a ladder used in connection with a freight car, and from which plaintiff's intestate had fallen, bent and dented, with the broken ends partly bright, as though recent, and partly rusted as though old, justified the jury in assuming that the defect had existed for a sufficient length of time to have enabled the defendant to discover and repair it had it exercised reasonable diligence to ascertain the condition of the ladder. The facts in this case are much more analogous to Degraff v. Railroad Co., 76 N. Y. 128, where it was held the master may not be held responsible for a mere defect in machinery without proof of negligence on his part, and that his negligence will never be presumed; and to Henkel v. Murr, 31 Hun, 28; McNally v. City of Cohoes, 127 N. Y. 350, 27 N. E. 1043; Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344; Kunz v. City of Troy, 104 N. Y. 344, 10 N. E. 442.

Besides all that has been said by the learned justice who tried the case, in relation to the rubber, we fail to see how that could have produced the injury complained of, even if it were as bad at the time the plaintiff slipped and fell as it was on the following day, or when the rubber was examined. From the testimony in the case it would appear that the edge of the rubber which was loose was against the iron guard on the front edge of the tread. This, if slightly elevated, might cause a person to slip going up the stairs, if his toe caught in it; but it is impossible to conceive how any one going down could catch the heel of the shoe in such a place, as the weight of the foot pressing upon the rubber would naturally press it closely against the tread. But if the loose edge of the rubber was furthest from the edge of the tread, and near the riser, then it is equally impossible to believe that the foot could have been caught in it, as the overhang of the tread above would bring the heel of the shoe beyond the edge of the rubber. The plaintiff examined one Ross, a carpenter, as a witness, and asked him certain questions as an expert, with the object of showing (1) a safe way of nailing down rubber treads, (2) whether rusty nails get loose, (3) whether a heel could loose a nail firmly driven, (4) whether a loose nail could be detected by inspection, (5) whether a nail which could be pulled out by the heel of a boot or one's fingers must have been loose for any period before, and (6) whether the heads of the nails show that they had been exposed and trodden on. As to some of these questions, they were excluded on the express ground that there was no evidence in the case on which to base the questions propounded; others of them were matters of common knowledge, which is never the subject of expert evidence (Schaffer v. Evans, 33 Cal. 32); and the remainder of them

related to the safety or danger of a structure, and in cases of that character expert testimony is inadmissible (Hart v. Bridge Co., 84 N. Y. 56; McDonald v. State, 127 N. Y. 18, 27 N. E. 358; Harley v. Manufacturing Co., 142 N. Y. 37, 36 N. E. 813; Swartout v. Railroad Co., 7 Hun, 571). As before said, there was no evidence that the nails were rusty, and of the other matters the jury could judge as well as the witness. We do not see how it is possible that a carpenter, from his peculiar knowledge, could tell whether a heel striking a nail would pull it out or not; nor would his peculiar knowledge enable him to say whether others, not carpenters, could tell whether a nail was loose or not by mere inspection. We therefore think that the complaint was properly dismissed, and the objections should be overruled, and the defendant have judgment of dismissal, with costs. All concur.