JOHN F. POLLARD *vs.* MAINE CENTRAL RAILROAD COMPANY.

Somerset.    Opinion November 14, 1894.

*Negligence.    Railroad.    Yard-Master.    Line of Duty.    Remote and Proximate Cause.    Practice.    Exceptions.*

The plaintiff recovered a verdict for personal injuries caused by the negligence of the defendant's yard-master in breaking off a car stake that supported a load of lumber, thus causing several heavy joists to fall upon him from the top of the car.

*Held;* That to maintain the action, the plaintiff must establish three propositions: (1,) That in breaking down the stake the yard-master performed an act which an ordinarily careful and prudent person in the same relation would not have done: (2,) That the act was done in the course of his employment and in the line of his duty; (3,) That there was no contributory negligence on the part of the plaintiff.

The evidence relating to the yard-master's conduct was in dispute and therefore presented an issue of fact for the jury. In this case, the finding of the jury upon this point was not so palpably wrong that no jury of fair-minded and impartial men could reach such a conclusion.

*Held;* That the question whether the yard-master was acting within the scope of his employment cannot properly be determined by sole reference to the inquiry whether the car had been reported as ready for shipment. The nature of the employment, the character of the service required, the character of the act done, the circumstances under which it was done, and the ends and purposes sought to be attained, were all material considerations and formed the real test of liability.

*Also,* That the plaintiff's negligence with respect to his manner of loading the lumber did not proximately contribute to produce the injury.

The plaintiff's conduct in this respect was not a part of the immediate transaction which caused the injury, but a prior distinct and independent transaction. It may have afforded the occasion or opportunity of the yard-master's active agency in breaking off the stake, but it formed no part of the direct and efficient cause of the injury. Under such circumstances the plaintiff's conduct cannot legally be deemed a contributory cause of the injury.

The defendant excepted to certain remarks made by counsel for the plaintiff during the charge of the presiding justice. *Held;* That the irregularity as an interruption was a matter between the court and counsel, and was not prejudicial to the defendant, nor open to the defendant on exceptions.

The practice relating to the proper method of presenting exceptions to the law court prescribed in *McKown* v. *Powers,* 86 Maine, 291, affirmed.

*O'Brien* v. *McGlinchy,* 68 Maine, 552; *Lasky* v. *Canadian Pacific Ry. Co.,* 83 Maine, 461, affirmed.

ON MOTION AND EXCEPTIONS.

The case appears in the opinion.

*D. D. Stewart*, for plaintiff.

*E. F. Webb, C. F. Johnson, and A. Webb*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-
HOUSE, WISWELL, JJ.

WHITEHOUSE, J. The plaintiff claimed damages for a per-
sonal injury, alleged to have been sustained by reason of the
negligent act of the defendant's yard-master in breaking off one
of the car stakes supporting a load of lumber and causing several
sticks of heavy joists to fall upon him from the top of the load.

At the trial of the action, in Somerset county, in March,
1892, a verdict was returned in favor of the plaintiff for twenty-
seven hundred and fifty dollars. The case was carried to the
law court on exceptions and motion for a new trial, and entered
at the May term, 1892.

The arguments of counsel were presented to the court in
May, 1894, and a printed copy of the case furnished August
16, 1894.

The following facts appear. In October, 1890, the plaintiff
was requested by the shipper to employ some one to load a car
of lumber for him, and to "see to the loading of it." He accord-
ingly employed Harlow S. Russell to perform the service, but
rendered personal assistance during the progress of the work.

The flat car assigned to the shipper by the defendant company
was thirty-two feet long and had the usual cast-iron sockets,
four on each side, to receive the necessary car stakes three by
three inches, or three by four inches, in size; but it was not
then provided with stakes, it being the duty of the shipper to
furnish car stakes suitable for his load. The plaintiff thereupon
procured six weather-worn stakes, hemlock and spruce and
possibly one basswood, two by four inches in size and from six
to eight feet in length; and these with two spruce stakes about
four feet long, belonging to the Pulp Company, were adjusted
by Russell to the sockets on the car. On the west side of the
car at the northerly end was the hemlock stake in question two
by four inches in size slightly decayed at the socket, and about

seven feet high, lengthened to eight feet by splicing a short piece
of chamfered plank to the upper end. At the south end was
another stake of about the same size and length, either hemlock
or basswood, with a shorter hemlock stake and the short pulp-
wood stake in the middle. The car was then loaded from the
platform on the west side, with 8226 feet of green pine deck
plank, five by three and one-half inches in size, and 3928 feet
of the same kind of lumber, four and one-half by three and one-
half inches in size, varying from sixteen to twenty-eight feet in
length and weighing 37,000 pounds.

It was found impracticable to load lumber of these dimensions
on a car thirty-two feet long so that it would stand piled in
regular tiers, or so that the tiers would be bound together.
When completed the load reached a height of nearly eight feet,
and pressing against the stakes, "flared out," or spread ten
inches or more at the top. By this means the stake at the
southwest corner was cracked when the last wagon load of lumber
was put onto the car.

In the regular course of the defendant's business as a common
carrier, it was the duty of the yard-master at Showhegan to
enter this car upon his shipping book when it was reported to
him by the shipper as ready for transportation, and also to see
that it was properly loaded and securely staked so as to be safe
to go in a mixed train of freight and passenger cars. The par-
ties differ in their recollection respecting the time when this car
was reported as ready to go. The yard-master, Howard,
confidently asserts that the car was reported to him by the
plaintiff himself on the morning of October 10, which he claims
was the day before the accident; and that he at once made the
entry on his shipping book; but upon inspection of the car he
discovered that it was not properly loaded and staked and
crossing out the entry on the book, he gave directions to have
the car made "suitable to run;" that it was not done that day,
but was reloaded after the accident on the 11th, and re-entered
on the shipping book on the 11th. This is corroborated by the
entries in the shipping book introduced in evidence.

It is not in controversy, however, that before the accident

Mr. Howard had notified the plaintiff that the car would not be allowed to go until the short stakes belonging to the Pulp Company were taken out, and also informed him that the hemlock stake in the northwest corner was not suitable for the purpose. The stake at the southwest corner which was cracked when the last of the lumber was put on, according to the testimony of the plaintiff's witness, was broken off by Howard himself, according to his own testimony, when he removed the "strapping." New stakes were accordingly ordered at the expense of the shipper, to supply the places of these three stakes on the west side and perhaps of some on the east side.

Under these circumstances, after the lumber was all on the car on the morning of the accident, the plaintiff in accordance with Howard's previous directions, undertook to draw out the short spruce stake belonging to the Pulp Company on the west side of the car, by striking up against it with an axe. While the plaintiff was thus engaged and for that purpose was standing on the platform in a stooping posture, Mr. Howard, the yardmaster, advanced to the stake at the northwest corner remarking to the plaintiff that he could "break that off with one hand" or with "one finger;" and immediately seizing it near the upper end with one hand, according to his testimony, or with both hands according to the plaintiff's testimony, he suddenly pulled the stake towards him and broke it off at the socket, thereby letting the joists at the top of the load fall upon the plaintiff's back and leg, causing the permanent injury of which he complains.

I. The Exceptions.

The following instruction was requested by the defendant's counsel and refused by the Court: "If the jury find that the insufficiency of the stake furnished by the plaintiff and put in the car, or the improper loading of the lumber on the car either in the amount of lumber put on the car or the manner of loading the same, contributed in the least to produce the accident the plaintiff cannot recover."

The question of the plaintiff's contributory negligence, as well as that of the defendant's negligence, was one of fact for

the determination of the jury.   The plaintiff may have furnished "insufficient" stakes or loaded the car in an "improper manner" and yet may not have been guilty of culpable negligence in so doing.   The effect of the requested instruction would have been to take this question from the jury altogether.

Again, the request ignores an essential principle underlying the doctrine of contributory negligence.   For if it be assumed that the conduct of the plaintiff in the use of defective stakes and the manner of loading the cars was negligent and that in a certain sense it "contributed" to produce the accident, it was still a question for the jury to decide, under appropriate instructions upon all the facts and circumstances of the case, whether it contributed to the accident in a legal sense so as to bar the plaintiff's recovery.   It may be true that if there had been no defective stakes, there would have been no accident; but the contributory negligence of the injured party that will defeat a recovery must have contributed as a proximate cause of the injury.   If it operated as a remote cause, or afforded only an opportunity or occasion for the injury, or a mere condition of it, it is no bar to the plaintiff's action.   Cooley on Torts, (2d Ed.) 816.   "It is not a proximate cause when the negligence of the defendant is an efficient intervening cause.   That is, when the negligence of the defendant is subsequent to and independent of the carelessness of the person injured, and ordinary care on the part of the defendant would have discovered the negligence of the injured party in time to have avoided its effects and prevented the injury.   There is no contributory negligence, because the fault of the injured party was remote in the chain of causation.   Therefore, if the injury was not the ordinary or probable result of plaintiff's conduct, but was due to some wholly unlooked for and unexpected event which could not reasonably have been anticipated or regarded as likely to occur, such conduct is not negligent and cannot be set up as a bar to the action. . . .   In all cases where negligence on the part of the plaintiff is connected with the cause of injury, the question to be determined is whether the defendant, by the exercise of ordinary care and skill, might have avoided the injury.   If he

could have done so, the negligence of the plaintiff cannot be set up as an answer to the action." 2 Wood on Railroads, § 319 a; Addison on Torts, 41. In Shearman & Redfield on Negligence, § 25, it is said that the injured party cannot recover "if he, by his own or his agent's ordinary negligence or wilful wrong, proximately contributed to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him." Were it not for the solecism of the expression "ordinary" negligence this would seem to be a correct statement of the law. In his analytical treatment of the subject in Vol. 16 of the Am. and Eng. Encyc. of Law, Mr. Russell defines a proximate cause to be "that cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred;" and in § 41 of his work on Non-Contract Law, Mr. Bishop defines the "inadequate remote cause" as "one which has so far expended itself that its influence in producing the injury is too minute for the law's notice; or a cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof."

But it is needless to multiply definitions or cite authorities from other jurisdictions, for the philosophy of causation involved in this class of inquiries has been clearly expounded and aptly illustrated in the recent decisions of this court. In *O'Brien* v. *McGlinchy*, 68 Maine, 557, it is said in the opinion by PETERS, C. J. : "Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. . . . But where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff, preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant." See also *Spaulding* v. *Winslow*, 74 Maine, 536.

The causal relation between the prior negligence of the plaintiff, if any, in the manner of loading the car, and the injury received, and the contributory negligence of the plaintiff at the time of the accident, were questions of fact for the jury, and they were properly submitted to the jury under instructions to which no exceptions have been presented to the court. The requested instruction was properly refused.

The defendant also requested an instruction that "if at the time of the accident the car from which Mr. Howard broke the stake had not been reported to the defendant company as ready for shipment, but was at that time under the control of Mr. Pollard acting for the shipper, then Mr. Howard was not acting in the line of his duty in interfering with the load upon said car or in breaking off the stake from the same and the defendant would not be liable." With respect to this request the presiding judge said to the jury : " I cannot give you that instruction as it is stated ; I give it to you in other words, in other language. You must be satisfied that at the time Mr. Howard was acting within the general scope of his employment and for the Maine Central Railroad Company ; but the mere fact that that car, if such is the fact, was not reported by Mr. Pollard to Mr. Howard as ready for shipment would not necessarily exonerate the company from the consequences of the act of Howard, if it was a negligent act, in going to that car and ascertaining whether it was in proper shape and was equipped with proper stakes, provided Mr. Howard at the time assumed to act as the agent or servant of the defendant corporation in the performance of that duty, notwithstanding the car had not been reported by Mr. Pollard to Howard as the agent of the company. . . . You must determine from all the evidence in the case whether or not Howard at the time of this accident was acting within the scope of his general employment as affecting some duty which he owed his employer. Was it within the scope of his general power and duties and did he assume so to act at the time of the accident? If he was not within the scope of his employment and he did not assume to act within the scope of his employment he would not render his master liable, because a servant of a

corporation may go outside of his employment and by acting either wilfully or negligently to effect some purpose of his own, and not as in the general employment of his master, render himself personally liable and not his master."

It was not at all in question but had been expressly and repeatedly conceded by the defendant's witnesses that under the general supervision of the station agent, the yard-master, Howard, had control of the loading of the freight cars in the yard; that although it was customary to leave a car in charge of the shipper to whom it had been assigned until the fact that it was ready for shipment and its destination, were reported by the shipper, it was still the duty of the yard-master to examine every loaded freight car before shipment to see if it was properly staked and strapped and "all right and safe to go."

Whether the plaintiff had intended to make a formal report of this car or not, it is a clear inference from all the evidence, including the entries in the shipping book and the conduct and statement of the parties at the time, that Howard understood that the car was to be ready to go on the morning of the accident. The work of loading the lumber on the car had in fact been completed. Howard had, in fact, inspected the car, condemned some of the stakes and ordered new ones to be substituted for them, and the plaintiff had acquiesced in this decision. There was no controversy that to this extent, at least, Howard had assumed control of the car. But it had not been definitely determined that all of the stakes on both sides should be removed as defective, and, for the purpose of confirming his suspicion and proving his assertion that the stake in the northwest corner was insufficient, Howard impulsively tested it in the manner stated.

The broken stake was exhibited to the jury and to the law court, and was manifestly defective and unfit for the purpose. The car was going in a mixed train and it was the plain duty of the yard-master, having due regard to the safety of passengers and the property interests of both the shipper and the defendant company, to have this stake removed and a more suitable one put in its place at some time before the car was allowed to go.

It is not suggested that further delay in performing this duty could have subserved any useful purpose either towards the shipper or the company.

With these facts and circumstances undisputed, the question whether the yard-master, in thus testing the stake, was acting within the scope of his employment and the line of his duty, could not be properly determined by sole reference to the inquiry whether the car had been formally reported as ready for shipment. The nature of Howard's employment, the character of the service required, the character of the act done, the circumstances under which it was done, and the ends and purposes sought to be attained, were all material considerations and constituted the real test of liability. 2 Wood on Railroads, 1398 ; Shearman and Redfield on Negligence, § 65 ; *Ramsden* v. *Railroad Co.* 104 Mass. 117 ; *Goddard* v. *G. T. Railway*, 57 Maine, 202.

The instructions actually given upon this branch of the case were adapted to the evidence and substantially correct, and the requested instruction could not properly have been given.

An exception was also taken to certain remarks made by the counsel for the plaintiff during the charge of the presiding judge.

The defendant's counsel had requested an instruction, and it was given in the exact language of the request. Thereupon, the plaintiff's counsel asked the presiding judge to call the attention of the jury to certain testimony bearing upon the instruction thus given. This the judge declined to do.

This request of the counsel for the plaintiff to have the attention of the jury directed to the facts in the case could not have been deemed improper if it had been deferred until the close of the charge. But its irregularity as an interruption was a question between the counsel and the court ; it was not prejudicial to the defendant. This objection is obviously without substantial merit and in any event is not open to the defendant on exceptions. *Sherman* v. *Maine Cent. Railroad Co.* 86 Maine, 422.

The printed bill of exceptions contained in the report also states that the defendant's counsel excepted to the admission of

certain evidence and to certain instructions given in the charge, but it does not give the language of the charge to which exceptions were taken, nor specify what the evidence was to which objection was made. True, reference is made to numerous pages of the manuscript report where, it is said, this evidence and these instructions may be found; but as the manuscript copy of the report is not before us and the corresponding pages of the printed report are not given, we have no means of ascertaining the precise groundwork of these exceptions, and but for the elaborate argument of the learned counsel for the defendant, it might reasonably be inferred that they had been intentionally abandoned. It is a satisfaction to add, however, that a careful examination of the entire report has failed to disclose any substantial cause for complaint respecting either the admission of evidence or the instructions given to the jury. An authoritative declaration of the rule of practice prescribing the mode of presenting exceptions to the law court will be found in *McKown* v. *Powers*, 86 Maine, 291.

II. The Motion.

The plaintiff's contention that there was actionable negligence on the part of the defendant's yard-master which rendered the company liable for his injury, involved the decision of three subordinate questions of fact: (1,) In breaking off the stake in question, did Howard perform an act which an ordinarily careful and prudent person in the same relation and under the same circumstances and conditions would not have done? (2,) Was the act done in the course of his employment and in the line of his duty as yard-master? (3,) Was there contributory negligence on the part of the plaintiff? The jury answered all of these inquiries in favor of the plaintiff. True, there was but little conflict of testimony upon points vital to the result. There was substantially no controversy in relation to the conduct of Howard in breaking the stake, or the circumstances and conditions existing at the time. But the deductions of fact to be drawn from the evidence were in dispute and therefore presented an issue of fact for the determination of the jury. *Lasky* v. *Railroad Co.* 83 Maine, 461. The question of ordinary care

is one which especially calls for the exercise of a jury's functions,
and cannot become a question for the court unless the facts are
all admitted and there is but one inference that can fairly and
reasonably be drawn from them.   When a given state of facts is
such that reasonable men may fairly differ upon the question
whether there was negligence or not, the determination of the
matter is for the jury.   *G. T. Railway Co.* v. *Ives*, 144 U. S.
408 ; 2 Wood on Railroads, 1433, and cases cited.

The defendant claimed, that in breaking down the stake under
the circumstances stated, Howard did nothing which an ordi-
narily careful and prudent man might not have done because it
could not reasonably be foreseen that such a consequence would
follow.   But Howard knew that the southerly stake on the west
side of the car was broken and that the two short middle stakes
only remained besides the long one in question which he declared
he could break with one finger.   He had knowledge of the
height of the load, of the size and kind of lumber, of the fact
that it was pressing against the stakes and that the load was
spreading at the top.   He also observed the position of the
plaintiff at the time, but gave him no actual notice of his pur-
pose to apply such a violent test to the stake, and no warning
at the moment it was applied.

The plaintiff claimed that the situation thus disclosed afforded
ample reason for one in the exercise of due care and caution, in
the position of the yard-master, to anticipate that if his experi-
ment resulted in breaking the only remaining long stake on that
side, the lumber at the top of the load would fall upon the
plaintiff as it did.   A simple proposition of fact was thus
presented involving the consideration of familiar duties and
experiences ; and the jury evidently found that Howard's
conduct was hasty and inconsiderate and without due regard to
the rights and safety of the plaintiff.   The question now is not
whether other reasonable men might not arrive at a different
result but whether this finding is so palpably wrong that no
jury of fair-minded and impartial men could reach such a
conclusion.   "To set aside the verdict of the jury is to say that
the inference drawn by the jury is indisputably wrong,— that

no such inference can fairly be drawn by any fair-minded men,—
that the contrary inference is not only the more reasonable
inference, but is the only reasonable inference." *York* v.
*Railroad Co.* 84 Maine, 117. Under this rule the court is not
authorized to reverse the finding of the jury upon this point.

With respect to the second element it was not claimed that
the yard-master broke the stake with intent to injure the plaintiff
or that in so doing he was attempting to serve any private
purpose or accomplish any personal ends. It was admitted to
be his duty to see that the car was properly loaded and staked
before it left the yard and he' was obviously engaged in doing
what he was employed to do in the furtherance of the business
of the defendant corporation ; and the fact that he attempted to
do it in an improper manner, or in a mode not contemplated
by his superior officer, has no tendency to show that the act
was not within the scope of his employment or the line of his
duty.

Finally it is contended that there was negligence on the part
of the plaintiff respecting the defective stakes and the manner
of loading the lumber and that this contributed to produce the
injury. But the plaintiff's conduct in these particulars was not
a part of the immediate transaction which caused the injury,
but a prior, distinct and independent transaction. It may have
afforded the occasion or opportunity for the operation of the
yard-master's active agency in breaking off the stake, but it
formed no part of the direct and efficient cause of the injury.
The fault of the plaintiff was the remote cause while that of the
defendant's servant was the proximate cause ; "the one a passive
the other an active agency ; the one having but a casual and the
other a causal connection with the ultimate event." *O'Brien*
v. *McGlinchy*, 68 Maine, 557. It appears further that the
lumber was so loaded and so far supported by the defective
stakes that the plaintiff stood upon the load with impunity when
the last plank was placed upon it ; and the jury must have found
that the defendant's servant might by the exercise of reasonable
care and prudence have avoided the consequences of any negli-
gence on the part of the plaintiff. Under such circumstances,

it has been seen that the plaintiff's conduct cannot be legally deemed a contributory cause of the injury. *Davies* v. *Mann,* 10 M. & W. 546 ; *G. T. Railroad* v. *Ives, supra* ; *O'Brien* v. *McGlinchy, supra.*

It is the opinion of the court that the evidence fairly authorized a finding in favor of the plaintiff on this branch of the case and that the entry must be

<div align="center">

*Motion and exceptions overruled.*