Merrimack, }
April 1, 1902. }

### STONE v. BOSCAWEN MILLS.

It is within the discretion of the trial court to permit the plaintiff to introduce additional evidence after he has rested and the defendant's motion for a nonsuit has been argued.

In an action for negligence against an employer, certain evidence deemed sufficient to warrant the finding that the injury sustained was the natural and probable result of a concealed defect which ordinary care would have disclosed to the defendant and the failure to give warning regarding the danger arising therefrom to the plaintiff, who at the time of the accident was in the exercise of ordinary care and engaged in the performance of duties within the scope of his employment.

CASE, for personal injuries alleged to have been caused by the defendants' failure to properly instruct and warn the plaintiff as to the dangers of his employment. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1901, of the superior court by *Peaslee*, J.

The plaintiff's evidence tended to prove the following facts: The accident happened June 4, 1900, when the plaintiff was fifteen years and six months old. The defendants operate a yarn mill in a building consisting of five stories and a basement. The floors above the basement were referred to in the evidence as follows, beginning with the ground floor: finishing room, spinning room, speeder room, card room, and attic. The bobbins are trans-

ported from floor to floor by means of a small freight elevator, which is started and stopped by raising and lowering a perpendicular iron rod called a shipper, which extends from basement to attic beside the elevator well. The elevator is supported by a rope which winds around a drum in the attic and is attached to a cross-beam above the middle of the elevator. When the elevator is stuck and the machinery is set in motion for a descent, the rope will uncoil from the drum. In such event, if the elevator is a considerable way down the well, the rope will run down through the ceiling and fall into the elevator, or at least show slack; but if the elevator is near the top of the well, the rope will simply uncoil on the attic floor, and there will be no visible indication at the elevator of what has happened. The elevator was usually operated by boys, who had orders to notify the mechanic in charge if there was trouble with it and it needed to be fixed. The plaintiff had worked in the mill for some time upon other jobs, and was familiar with the general operation of the elevator. He had seen the rope drop once, and supposed that if there was any slack it would always show. He also knew that riding upon the elevator was forbidden. In April, 1900, he was hired as a bobbin boy, his work consisting of transporting bobbins upon the elevator between the first, second, and third floors. He had no duties upon the two upper floors or in the basement, except such as might be inferred from his employment about the elevator. The elevator when needed for use might be at any part of the well, and was used by other employees beside the plaintiff. He was not instructed or warned by the defendants.

On the day of the accident the plaintiff loaded the elevator at the first floor, set it in motion, and started to walk up the stairs. At the second floor he stopped to see if there would be a load for him to take on his return, and then looked out of the window at a wedding procession. When he returned to his duties he found that the elevator had gone to the attic, and in some way learned that it was stuck there. He then went up and found that it was held fast by the shoe, upon the bottom of the box of bobbins, being caught between the floor of the elevator and the back of the well. He looked at the rope, which appeared to be pulling up on the elevator. Thinking that if the box were released the elevator would ascend, he stooped over the guard-rail or board which was across the front of the well, and pulled the box. The elevator fell, the cross-bar at the top striking the plaintiff on the back of the head and precipitating him with the elevator substantially to the bottom of the well.

The rope had theretofore become uncoiled upon the attic floor, out of sight of the plaintiff and in a separate room, which he sup-

posed was then locked, according to the usual custom. The plaintiff knew that if the elevator fell when his head was under the cross-bar he would be injured; that shifting the cord reversed the machinery, and caused the rope to unwind and the elevator to descend; that he could have tested the tension of the rope by taking hold of it; that the position of the finger on the shipping rod indicated how the machinery was set; that yanking the box as he did would loosen the elevator in the well so that it would go up or down according to the direction of the force propelling it; and that the elevator sometimes failed to work because the belts slipped. He did not think of these things at the time, and trusted to the appearance of the rope without further inspection or reflection. He knew that it was his duty to call the mechanic if the elevator needed fixing or would not work; but he did not consider that the removal of the box came within the definition of those terms, and did not think the trouble was such as he should report.

After the plaintiff had rested and the defendants' motion for a nonsuit had been argued, the plaintiff was allowed to introduce further evidence, subject to the defendants' exception. A portion of this evidence tended to show that those who worked as bobbin boys had occasion to take the elevator to the attic at times, but there was no evidence that Stone had had such occasion; that it was not the practice to watch the elevator very carefully, and as a consequence it sometimes went beyond its destination. The defendants excepted to this line of evidence as incompetent, and for the further reason that the testimony did not disclose a sufficient number of instances to establish a custom.

At the close of the plaintiff's evidence the defendants moved for a nonsuit, and at the close of all the evidence that a verdict be directed in their favor. The motions were denied, and the defendants excepted.

*Willis G. Buxton* and *David F. Dudley*, for the plaintiff.

*Samuel C. Eastman* and *Eastman & Hollis*, for the defendants.

REMICK, J. I. It was within the discretion of the trial court to permit the introduction of further evidence by the plaintiff, notwithstanding he had rested, the defendants had moved for nonsuit, and the motion had been argued. *Sanford Mfg. Co.* v. *Wiggin,* 14 N. H. 441, 451; *Wells* v. *Burbank,* 17 N. H. 393; *State* v. *Martin,* 89 Me. 117; *Meserve* v. *Folsom,* 62 Vt. 504; *Case* v. *Dodge,* 18 R. I. 661; *Trumbull* v. *O'Hara,* 68 Conn. 33; *Wingo* v. *Caldwell,* 35 S. C. 609; *Cushman* v. *Coleman,* 92 Ga. 772; *Kelly* v. *Company,* 22 Col. 221; *Garber* v. *Gianella,* 98 Cal. 527;

*Illinois etc. R. R.* v. *Griffin,* 80 Fed. Rep. 278, 281. Were we at liberty to revise this discretion, it does not appear to have been improperly exercised.

II. The defendants' motions for a nonsuit and verdict were properly denied. There was evidence from which reasonable men might find that the elevator was defective; that the danger was concealed; that the defendants in the exercise of ordinary care ought to have known of it, and warned and instructed the plaintiff regarding it; that the defendants neglected so to warn the plaintiff; that the plaintiff neither knew, nor in the exercise of ordinary care ought to have known, of the danger; that the injuries complained of were the natural and probable result of such defect, danger, and neglect to warn.

(1) The fact that the plaintiff permitted the elevator to run up to the attic floor, when in the regular course of his duty he would have stayed it at the spinning-room or speeder-room floor, is no answer to the present action. The findings " that it was not the practice to watch the elevator very carefully, and as a consequence it sometimes went beyond its destination," and that " the elevator when needed for use might be at any part of the well, and was used by other employees besides the plaintiff," leave little basis for the claim that the plaintiff was negligent in this connection. Whether he was negligent or not in this respect was, certainly in view of the nature of the service, and the evidence and findings in the case, a question for the jury. If negligence, " it was only a remote cause, affording only an opportunity or occasion for the injury, or a mere condition of it," and therefore no bar to the plaintiff's action. *McGill* v. *Granite Co.,* 70 N. H. 125, 128; *Pollard* v. *Railroad,* 87 Me. 51; *Fickett* v. *Fibre Co.,* 91 Me. 268; *Terre Haute etc. R. R.* v. *Mansberger,* 65 Fed. Rep. 196; *Tullis* v. *Railroad,* 105 Fed. Rep. 554, 558; Cool. Torts (2d ed.) 16.

(2) The contention that the plaintiff was voluntarily outside the sphere of his employment at the time of his injury, and therefore cannot recover, is untenable. While, generally speaking, the plaintiff " had no duties upon the two upper floors or in the basement," the discharge of his duty in relation to the floors to which he was assigned involved the operation by him of an elevator which moved in a well from basement to attic, and which when needed for his particular work " might be at any part of the well." The elevator having stuck in the attic, and being necessary to the performance by the plaintiff of his duties elsewhere, it cannot properly be said that he was outside the scope of his employment in going to the attic to see what the trouble was. The defendants' overseer, McGill, testified in effect that the plaintiff was expected to go to other places than those to which his particular

duties related, for the purpose of freeing the elevator from obstructions of a certain kind. It follows logically that he was within the scope of his employment in going to the attic on the occasion in question. He could not otherwise know whether the obstruction was a trivial one, such as he was expected to remove himself, or of the kind which it was his duty to report to the "mechanic in charge."

(3) But it is suggested that if the plaintiff was properly in the attic at the time of the injury, he had no right to remove the obstruction; that he should have reported it to the mechanic in charge; that in attempting to remove the obstruction himself he acted not only as a volunteer, but contrary to instructions. We are unable to see how the obstruction in the present case was materially different in character from the kind which the overseer testified it was the plaintiff's duty to remove. Independently of this testimony, it is improbable that the instruction to report to the mechanic in charge contemplated that the plaintiff should report trifling obstructions requiring no mechanical skill, easily within the understanding and capacity of the elevator boy, and involving no hazard under normal conditions.

(4) In view of the concealment of the slack in the attic, and the reasonableness of the supposition that the elevator would ascend, or at least be steadied in its motion by the rope, when the obstruction was removed, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence, and assumed the risk of resulting injury, in stooping over the guard-rail which was across the front of the well and pulling the box which caused the obstruction. " Not only has the determination of such questions in this jurisdiction been relegated to the decision of the jury, under proper instructions of the court, by a long and unbroken line of decisions, but, in addition, it may properly be observed that if this case were of new impression, nothing appears which would justify the granting of the defendant's motion under the circumstances attending the plaintiff's injury." *Brown* v. *Railroad,* 68 N. H. 519.

*Exceptions overruled.*

All concurred.