THE FRANK AND WILLIE.[1]

CLOWES *v.* THE FRANK AND WILLIE.

(*District Court, S. D. New York.* March 23, 1891.)

1. NEGLIGENCE—PERSONAL INJURY—MASTER AND SERVANT—FELLOW-SERVANTS.
    Where a mate of a vessel, working with a seaman and stevedores in discharging cargo, the captain of the vessel being absent, continued to unload the cargo in a dangerous manner, after his attention had been called to the danger and complaints had been made, and the cargo subsequently fell and injured the sailor, the vessel was held liable for the injury.

2. SAME—LIABILITY OF EMPLOYER.
    Ship-owners are bound to provide seamen with reasonable security against dangers to life and limb by the usual means, when such dangers are brought home to the knowledge of the proper officer.

3. SAME—FELLOW-SERVANTS.
    Under the circumstances of this case, the mate of a vessel and a sailor were held not fellow-servants, in respect to making safe the means of discharging the cargo.

In Admiralty. Suit to recover damages for personal injuries.
*Hyland & Zabriskie*, for libelant.
*Robert D. Benedict*, for claimant.

BROWN, J. On the 18th of July, 1890, while the schooner Frank and Willie was discharging a cargo of lumber at one of the docks in Gowanus canal, the libelant, an able seaman, who was unloading from the hold, had his left leg broken, through the fall of lumber against and upon him. He was treated at the hospital at the ship's expense, and now brings this suit to recover damages for the injury. The libelant was at work with the mate on the port side of the schooner, and under his direction; others worked on the starboard side, discharging through the same hatch. The lumber consisted of pieces from 12 to 30 feet long, and about 8 inches wide by 3 inches thick. They were piled in tiers, and were not fastened together by ties. After a space was cleared down to the floor over the keel, the lumber stood about 7 feet high. They did not discharge from the top across to the side of the ship, but worked up and down, nearly perpendicularly. The libelant, and many witnesses

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

in his behalf, testify that the tiers became shaky, and that repeated ex-postulations were made with the mate against discharging in that way, without leaving a proper support at the bottom for the high tiers above to prevent their falling; that they told him that this method was danger-ous; and that it ought to be worked sloping, like stairs, as the gang were doing on the starboard side. The mate testifies that he did discharge in that way; but his testimony is clearly overborne by other witnesses, who say that he replied with oaths, and would not do as requested. A list of the ship to starboard made the lumber more liable to fall. The libelant was new to the handling of lumber, and had been instructed to be careful in taking off his end of the sticks, while the mate took the other end, so as not to pull down the top of the pile. The defendants contend that it was through the plaintiff's negligence in not observing this precaution that the pile was pulled over when only two or three tiers remained. When the pile fell, the libelant had removed, and was holding, his end of one of the sticks. The mate had not taken up his end, and so was able to get out of the way.

It is impossible to tell whether the libelant did or did not contribute to the fall of the lumber. By the common-law rule of this state, the plain-tiff, in order to recover in such a case, must not only show defendant's negligence, but prove affirmatively that he himself was not guilty of the smallest contributory fault. *Dobbins* v. *Brown*, 119 N. Y. 188, 195, 23 N. E. Rep. 537; *Reynolds* v. *Railroad Co.*, 58 N. Y. 248; *Cordell* v. *Rail-road Co.*, 75 N. Y. 330; *Bond* v. *Smith*, 113 N. Y. 378, 21 N. E. Rep. 128; *Stone* v. *Railroad Co.*, 115 N. Y. 111, 21 N. E. Rep. 712. Under such a rule, I might not be authorized to give anything to the libelant. But this harsh rule on shipboard would offer too great indemnity to cru-elty and oppression; it is not now the rule of our admiralty courts. *The Max Morris*, 137 U. S. 1, 11 Sup. Ct. Rep. 29, affirming 24 Fed. Rep. 860. The libelant's inexperience is not proof of negligence, while the known fact that he had been previously unused to this kind of work was only an additional reason why the mate should have taken at least the usual precautions to prevent the lumber from falling. The weight of testimony leaves no doubt in my mind that the mate persistently and obstinately refused to do so. The libelant is therefore entitled to recover something, provided that the refusal to take these precautions constituted a breach of duty owed by the ship or her owners to the libelant.

It is earnestly contended for the defense that the case presents, at most, the negligence of a fellow-servant only, for which there can be no recovery against the ship or owners; and if the mate's obstinacy was only the negligence of a fellow-servant the defense is good. The mere fact that fellow-workmen occupy different grades or departments in the common service, or that one has a higher position or authority over an-other, does not necessarily make any exception to the usual rule. *Coyne* v. *Railway Co.*, 133 U. S. 370, 10 Sup. Ct. Rep. 382; *Steam-Ship Co.* v. *Merchant*, 133 U. S. 375, 10 Sup. Ct. Rep. 397; *Halverson* v. *Nisen*, 3 Sawy. 562; *Anderson* v. *Winston*, 31 Fed. Rep. 528; *Quinn* v. *Lighterage Co.*, 23 Fed. Rep. 363; *The City of Alexandria*, 17 Fed. Rep. 390–392;

*The Queen,* 40 Fed. Rep. 694–696. But the case shows that the mate, after notice of the dangerous condition of the pile of lumber, which his own unskillfulness or negligence had brought about, and after complaint made at least an hour before the accident, refused to take the usual precautions to make the pile safe, and, in effect, required the libelant to continue work in this dangerous situation. This was breach of a duty owed by the ship and owners to the seaman, for which the ship and owners are liable. Employers are required to provide workmen with reasonably safe conditions for work, according to the nature of the business, and to the customary provisions for the safety of life and limb. This is emphatically so as regards seamen, who are bound to obedience, and have not a landsman's option to throw up work. Obedience to officers is the necessary law of the ship; disobedience is criminal; and seamen have the corresponding right to protection against needless exposure. They are not required to vindicate their right to security by refusal to work at the risk of being put in irons or going to jail. While the mere negligence of officers in looking after the ship's condition may perhaps not make the ship liable, as held in *Halverson* v. *Nisen, supra,* (but see *Jansen* v. *Sachem,* 42 Fed. Rep. 66, 67,) a refusal by the master to repair rigging after it has been reported defective has been recently held by Mr. Justice GRAY to make the ship liable. *The A. Heaton,* 43 Fed. Rep. 592. The principle involved, viz., the duty to provide reasonable security against danger to life and limb, by at least the usual methods, when these dangers are brought home to the knowledge of the proper officers, is manifestly a general one. It attends the seaman wherever he is required to go on shipboard in the performance of his duties, and applies as much to a dangerous condition of the cargo as to defective rigging or a rotten spar. In the case of *The Kate Cann,* 2 Fed. Rep. 241–245, the bark was held by BENEDICT, J., liable to an injured stevedore, because the dunnage and plank where he was required to work in the ship's hold had not been properly secured, the dangerous situation being held a violation of a duty that the ship and her owners owed to the workmen. The same principle has been repeatedly applied in this court in favor of stevedores or their employes on board. *The Helios,* 12 Fed. Rep. 732; *The Max Morris,* 24 Fed. Rep. 860; *The Guillermo,* 26 Fed. Rep. 921; *The Nebo,* 40 Fed. Rep. 31. It has been long held the ship's duty to use all reasonable means to cure seamen of their hurts in the ship's service, the neglect of which makes ship and owner liable. It would be anomalous to enforce such a duty to cure hurts, but none to avoid them. *The Scotland,* 42 Fed. Rep. 925, 927. I cannot distinguish this case in principle from that of *The A. Heaton, supra,* and others above cited. The master was absent, and the mate was not only temporarily in command, but, as mate, he was the officer having charge in unloading the cargo,—the representative of the ship and owners in the supervision of that work. His attention was specially called to the dangerous situation, its correction was requested, and the libelant was practically helpless. I do not hold the ship liable for the mate's mere negligence as a fellow-workman in producing the dangerous situation, but for his refusal to remedy it when

complaint was made, and the danger pointed out to him. As I have some doubt, however, whether the libelant's negligence did not also contribute to the accident, and as it was not proved that any great permanent disability will probably result, I allow the libelant $400, and costs. *The Max Morris*, 137 U. S. 1, 11 Sup. Ct. Rep. 29, 24 Fed. Rep. 860.