### THE JOSEPH B. THOMAS.

### WATTS et al. v. JENSEN.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1898.)

### No. 385.

1. NEGLIGENCE—PERSONAL INJURIES — LIABILITY OF MASTER AND OWNERS OF VESSEL.

It is the duty of the master of a vessel to provide a stevedore with a safe place in which to work, and to exercise ordinary and due care in keeping the premises reasonably secure against danger; and he is liable for an injury which is the result naturally to be expected from an act of his employé which could have been foreseen and guarded against by the exercise of ordinary care.

2. SAME.

Where an employé on a vessel placed an empty keg on the hatch covers, in such a position that an accidental jar caused it to fall in the hatchway and injure a stevedore, the master and owners are liable.

3. SAME—PROXIMATE CAUSE.

The negligent placing of a freshly-painted keg on a pile of hatch covers to dry, in a position where a slight jar, caused by some one stepping on the hatch covers, causes it to fall down the hatch and injure a stevedore, is the proximate cause of such injury, so as to make the ship liable, notwithstanding that the hatch covers were negligently piled by the stevedore.

Appeal from the District Court of the United States for the Northern District of California.

Andros & Frank, for appellants.

Frank P. Prichard, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.    This is a libel in rem against the ship Joseph B. Thomas to recover the sum of $10,000, as damages for personal injuries alleged to have been sustained in consequence of the negligence of the master of the vessel, and of those intrusted by the owners of said vessel with its care and management.    The undisputed facts are that the libelant was one of a gang of stevedores engaged in loading the ship at the port of Philadelphia, and was injured while at work in the lower hold of the vessel, under the forward hatch; that at the time of the accident most of the men, including the libelant, were at work in the lower hold, under or near the forward hatch, engaged for the most part in tearing up a stage which had been put up in the hold in order to render the work of loading more easy; that the hatch covers, consisting of three pieces, had been taken off that morning, and were piled one on top of the other, forward of the forward hatch on the main deck; that these hatch covers were somewhat curved; that the hatch coamings were about 9 or 10 inches high, and the covers, piled one on top of the other, were nearly flush with the hatch coamings; that a keg belonging to the ship, which had been freshly painted, was placed by some one on these hatch covers to dry; that this keg was knocked over into the hatchway, and, in its fall, struck the libelant on the head, inflicting severe injuries; or, in other words, to quote the language of one of the witnesses:

"There was a little keg standing on one corner of the hatch cover,—on the port corner of the hatch cover; and one of the men happened to touch the top hatch cover on the starboard side, and through that it started the keg off the hatch cover, and the keg went down through the hatch, and struck the man."

The disputed facts are substantially confined to two questions, viz.: (1) Was it a stevedore or a sailor who trod upon the hatch covers? (2) Were the hatch covers improperly piled?    The court below, after an extended review of the testimony, came to the conclusion that it was one of the young men belonging to the ship, and not one of the stevedores, who stepped on the hatch covers, upsetting the keg; that, so far as the evidence discloses, the hatch covers were piled

in the usual and proper manner. The conclusions of the trial court upon disputed questions of fact, where the witnesses were present at the trial, are, as a general rule, accepted by the appellate court. The Albany, 48 Fed. 565; The Alijandro, 6 C. C. A. 54, 56 Fed. 624; The Lucy, 20 C. C. A. 660, 74 Fed. 572; The Glendale, 26 C. C. A. 500, 81 Fed. 635. But the reason in favor of that rule does not exist, and cannot be applied (at least, not to the same extent), in a case like the present, where all of the testimony was taken before an examiner. The Glendale, supra. The object of arriving at a correct conclusion as to the disputed facts in this case is only material in so far as the result reached thereon might bear upon the legal questions to be considered,—as to whether the injury which appellee received was occasioned in whole or in part by the negligence of one or more of his fellow servants, or was occasioned in whole or in part by the negligence of the agents and servants of the appellants. There is no question raised as to any contributory negligence of the appellee. He is clearly shown to be entirely free from any fault or negligence in the premises. The legal contention of the appellants is that upon the facts, as found by the district court, the judgment should have been in their favor. Their argument is that the injury to appellee occurred from the immediate act of the person who trod upon the covers; that such person was a fellow servant of the appellee, one of the employés of the stevedore who was loading the vessel, under a contract with the owners thereof, and over whom appellants had no control; that the proximate cause of the injury to appellee was the fact that the hatch covers were piled one upon another, in such a manner that when the employé trod upon them the covers tilted and overturned the keg, and it fell through the hatchway into the hold. The legal contention of appellee is that, if the facts should be found by this court as claimed by the appellants, the judgment of the court would nevertheless be correct. In other words, his argument is that it was negligence on the part of the officers and employés of the ship to place an empty keg upon a pile of covers, the top of which was flush with, and adjacent to, an open hatchway, and to allow the keg to remain in that position, where any jar or movement of the covers would have the effect of precipitating it into the hold below, and that this negligence was the proximate cause of the injury. What are the principles of law applicable to this case?

1. What duty did appellants owe to appellee? Their duty was to provide him a safe place in which to work, and to exercise ordinary and due diligence and care in keeping the premises reasonably secure against injury or danger. This is the pith and substance of all the decisions upon this subject, as expressed in a great variety of cases, each having reference to the special facts and surroundings of the evidence relating thereto. In Gerrity v. The Kate Cann, 2 Fed. 241, 246, where a stevedore was injured by the fall of dunnage and plank upon him, the court said:

"There was a relation between the shipowner and the libelant, arising, not out of the mere presence of the libelant on board the ship, but out of the service he was then engaged in performing, the necessity of that service to the shipowner, and the circumstances of the libelant's employment to perform that

service. The libelant had therefore a right to be where he was, and it follows that there was a duty on the part of the owner to see to it that the dunnage and plank stowed above him were so secured as to prevent its falling upon him of its own weight."

This case was affirmed upon appeal in 8 Fed. 719.

In The Frank and Willie, 45 Fed. 494, 496, where a seaman was engaged unloading cargo from the hold of the vessel, and had his leg broken by the fall of lumber against him, the court said:

"The duty to provide reasonable security against danger to life and limb, by at least the usual methods, when these dangers are brought home to the knowledge of the proper officers, is manifestly a general one. It attends the seaman wherever he is required to go on shipboard in the performance of his duties, and applies as much to a dangerous condition of the cargo as to defective rigging or a rotten spar."

In Leathers v. Blessing, 105 U. S. 626, 629, where the libelant went upon board a steamboat, expecting a consignment of cotton seed, to ascertain whether it had arrived, and was injured by the fall of a cotton bale, the court, after stating the facts, said:

"This makes the case one of invitation to the libelant to go on board in the transaction of business with the master and officers of the vessel, recognized by them as proper business to be transacted by him with them on board of the vessel at the time and place in question. Under such circumstances, the relation of the master and of his co-owner, through him, to the libelant, was such as to create a duty on them to see that the libelant was not injured by the negligence of the master."

See, also, White v. France, 2 C. P. Div. 308; The Max Morris, 24 Fed. 860; The Carolina, 30 Fed. 199; The Phœnix, 34 Fed. 760; Johnson v. Bank, 79 Wis. 414, 421, 48 N. W. 712.

2. Was it negligence on the part of appellants in placing, or allowing its servants to place, an empty keg on the hatch covers, in such a position that an accidental jar or disturbance would naturally cause it to fall in the hatchway, and thereby endanger the life and limbs of the stevedores at work in the lower hold of the vessel? Was it such negligence on the part of appellants as will justify the court in holding them liable in damages for the injury received by appellee? Was it the proximate or efficient cause of the injury? We do not understand appellants to deny that the keg was placed on the covers by one of their servants connected with the vessel. It belonged to the ship, and was used as a receptacle for drinking water. It had been freshly painted, and was placed upon the covers to dry. There is no evidence tending in the slightest degree to show that it was placed there by any person other than an employé of the appellants. The argument of appellants is to the effect that the keg was not placed in such close proximity to the hatchway that, if accidentally jarred or moved, it was liable to roll or fall; that its position was not one of impending danger; that there was no probability of the injurious consequences attached to the placing of the keg on the covers; that its position was seen during the day by the stevedores and others, who never spoke of its being in a dangerous position; and that for these and other reasons it ought not to be held that appellants did not use reasonable care. Counsel do not, and, under the facts, could not, claim that there was not some possible danger. The result shows,

beyond controversy, that the keg was placed in such a position that it was liable to roll over and fall, upon any disturbance, be it slight or great. It did fall when a person inadvertently or accidentally stepped upon the hatch covers. This, in the very nature of things, was liable to occur, and did occur. There is no need of indulging in conjectures or probabilities as to what was or was not liable to happen if the covers were stepped upon. The placing and leaving of the keg on top of the hatch covers, whether within one foot or four feet of the hatch, cannot, in law, be said to be the exercise of ordinary care or reasonable diligence. If the covers were, as claimed by appellants, improperly piled, it would not of itself relieve appellants from liability. It was the duty of the employé, when he placed the keg on the covers, to observe their position, and to see that the place was safe. Moreover, if, as appellants claim, the insecurity of the hatch covers was plainly visible and apparent to the eye, then the mate of the vessel, who testified to this fact, and saw the keg on the covers, was certainly guilty of negligence in not removing it from a place of danger. It is true that negligence is not to be presumed from the mere fact of an injury having been received. Negligence, like any other fact, must be proven. But it often happens that the evidence which shows the injury, and the manner in which it occurred, also establishes a prima facie case of negligence, and raises such a strong presumption as to cast upon the opposite party the necessity of introducing proof of other facts in order to show that there was no negligence. In Sheridan v. Foley (N. J. Sup.) 33 Atl. 484, where the injured party was engaged in laying a sewer pipe at the foot of one of the walls of a building then in the course of construction, and was struck upon the head by a brick from above, it was held to constitute prima facie evidence of negligence on the part of the contractor, and that, in the absence of any explanation by the contractor, it would be presumed that the injury occurred from want of reasonable care on his part, and that he was liable for the injuries inflicted. The court said:

"While it is true, as a general principle, that mere proof of the occurrence of an accident raises no presumption of negligence, yet there is a class of cases where this principle does not govern,—cases where the accident is such as, in the ordinary course of things, would not have happened if proper care had been used. In such cases the maxim, 'Res ipsa loquitur,' is held to apply; and it is presumed, in the absence of explanation by the defendant, that the accident arose from want of reasonable care."

And after quoting from Kearney v. Railway Co., L. R. 5 Q. B. 411, L. R. 6 Q. B. 759, and Byrne v. Boadle, 2 Hurl. & C. 722, and citing Bahr v. Lombard, 53 N. J. Law, 233, 21 Atl. 190, and 23 Atl. 167, it concluded as follows:

"The facts in the present case bring it within the application of this principle. The bricks were in the custody of the defendant's servants at the time when this one fell, and it was their duty to so handle them as not to endanger others who were engaged in other work upon the same premises. This brick could not have fallen of itself; and the fact that it fell, in the absence of explanation by the defendant, raises a presumption of negligence. If there are any facts inconsistent with negligence, it is for the defendant to prove them."

In other words, there are cases where the fact that the accident happened, under given conditions, and in connection with certain cir-

cumstances, will amount to evidence of negligence sufficient to charge the defendant. Scott v. Docks Co., 3 Hurl. & C. 596; 2 Thomp. Neg. 1227 et seq.; Mullen v. St. John, 57 N. Y. 567; Hogan v. Manhattan R. Co., 149 N. Y. 23, 43 N. E. 403; Dixon v. Pluns, 98 Cal. 384, 388, 33 Pac. 268; Howser v. Railroad Co., 80 Md. 146, 30 Atl. 906; McCauley v. Norcross, 155 Mass. 584, 30 N. E. 464; 1 Shear. & R. Neg. §§ 58–60.

The case at bar is, in its facts, as strong as any of the cases above cited, and as to some of them much stronger. Here the case does not rest upon the mere fact that the keg fell down the hatchway, but all the facts tending to show negligence were specifically proven. The placing of the keg on the hatch covers, its close proximity to the open hatch, its liability to lose its equilibrium and be upset by any person who might, by accident or otherwise, tread upon the hatch covers, all tend to show, and do show, that there was negligence. These facts are certainly of such a nature as to raise a presumption of negligence, according to the maxim, "Res ipsa loquitur." In Shear. & R. Neg. (4th Ed.) § 59, the authors say:

"In many cases the maxim, 'Res ipsa loquitur,' applies. The affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury: but in these cases the surrounding circumstances, which are necessarily brought into view by showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant's duty, and of his neglect to perform it. The fact of the casualty, and the attendant circumstances, may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer. The accident, the injury, and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault."

But counsel argue that the negligence of the servant of appellants in placing the keg in the position stated was not the proximate cause of the injury; that it was the negligence of the stevedore in piling the covers, and the negligence of the stevedore in stepping on the covers, that was the proximate cause of the accident that occurred. Of course, if the man or boy had not run against or stepped upon the covers, there might not have been any accident at that particular time. But it was not the covers, nor the person that stepped on the covers, that was the real cause of the injury. You can twist and turn the facts in any direction which the ingenuity and ability of counsel may suggest, but the mind is inevitably forced to the conclusion that it was the negligent placing of the keg in a dangerous position that constituted the efficient and controlling cause of the injury. It was the natural result, which, in the light of the attending circumstances, the appellants ought reasonably to have foreseen might occur when the keg was put upon the covers; and one which, by the exercise of ordinary care and prudence, they should have guarded against. They were required to use such precautions to avoid danger as a person of ordinary prudence would use for his own protection. It makes no difference whether it was a man or a dog that ran against or stepped upon the covers, or whether it was a jar occasioned by the falling of a heavy box, or a gale of wind. It was the placing of the keg in such a position that it was liable to be upset from any of these causes that

constitutes the negligence, and creates the liability, notwithstanding the fact that there were other causes which may have immediately or remotely contributed to the accident. Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. If appellants' negligence concurred with some other event (other than the fault of appellee) to produce the injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the appellants would be responsible, though their negligent act was not the nearest cause in the order of time. The rule is given in 1 Shear. & R. Neg. (4th Ed.) § 31, as follows:

"The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto, in any degree, whether large or small, is of no importance. * * * It is immaterial how many others have been in fault, if the defendant's act was an efficient cause of the injury."

In 16 Am. & Eng. Enc. Law, 440, it is said:

"It is no defense, in an action for a negligent injury, that the negligence of the third person, or an inevitable accident, or an inanimate thing, contributed to cause the injury of the plaintiff, if the negligence of the defendant was an efficient cause of the injury. In such cases the fact that some other cause operates with the negligence of the defendant in producing the injury does not relieve the defendant from liability. His original wrong concurring with some other cause, and both operating proximately at the same time in the production of the injury, he is liable to respond in damages, whether the other cause was a guilty or an innocent one."

Numerous authorities are there cited in support of this text. See, also, Pollard v. Railroad Co., 87 Me. 51, 55, 32 Atl. 735; Hall v. Railway Co. (Utah) 44 Pac. 1046, 1049; Paulmier v. Railroad Co., 34 N. J. Law, 151, 155; Stetler v. Railroad Co., 46 Wis. 497, 509, 1 N. W. 112.

In The Phœnix, 34 Fed. 760, where there was some evidence to the effect that the acts of a fellow servant also contributed to the injury, Simonton, J., said:

"But for the negligence of the one, perhaps the action of the other, the accident might not have happened. * * * This, however, does not exonerate the ship. Even in the narrow administration of the common-law courts the negligence of an employé will not excuse the common master for an injury to a fellow servant, if the master himself was negligent. Railway v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493. And, in the broad and liberal administration of admiralty, contributory negligence on the part of the libelant himself would not exonerate the ship."

The conclusions we have reached are not in opposition to the principles announced in the authorities cited by appellants, when applied to the particular facts of each case. In Millie v. Railway Co. (Com. Pl.) 31 N. Y. Supp. 801, the evidence merely showed that plaintiff fell down the stairs of defendant's elevated railroad, by catching her foot on one of the steps, and that after her fall it was discovered that the rubber covering on one of the steps was loose. The suit was dismissed. Why? Because there was no proof of any negligence on the part of the defendant, and no act or circumstance shown from which negligence could be inferred. There was no evidence that she tripped or caught her foot on the step that was loose, and non constat but the accident might have occurred by her tripping upon one of the

steps that was not loose. This of itself was sufficient to prevent a recovery. The other question of fact, as to whether the evidence showed that the rubber on the step had been out of repair for a sufficient length of time to impart notice to the defendant, has no special application to this case; for here the negligent act of the appellants consisted in placing the keg in the place where, from its position, danger was liable to occur. We have constantly recognized the principle, for which appellants contend, that no one can be held liable for an injury which was not the result naturally and reasonably to be expected from the act of his employé, and could not have been foreseen. Railway Co. v. Kellogg, 94 U. S. 469; Sheridan v. Bigelow, 93 Wis. 426, 67 N. W. 732; McGowan v. Railway Co., 91 Wis. 147, 64 N. W. 891; Henry v. Railroad Co., 50 Cal. 183; Motey v. Marble Co., 20 C. C. A. 366, 74 Fed. 155. But it logically follows that the converse of this proposition must be true,—that the master should in all cases be held liable for an injury which was a result naturally and reasonably to be expected from an act of his employé, which could have been foreseen and guarded against by the exercise of ordinary care and reasonable diligence. The decree of the district court is affirmed, with costs.