### THE HARRY HUDSON SMITH.

### In re EXCELSIOR COAL CO.

(Circuit Court of Appeals, Second Circuit.   December 5, 1905.)

No. 68.

1. SHIPPING—LIMITATION OF LIABILITY—KNOWLEDGE OR PRIVITY OF OWNER.

An owner who, after a general inspection, purchases a vessel from a shipbuilder of recognized standing and reputation, who equips her with machinery, means, and appliances which are suitable and sufficient, if properly used, may limit his liability for injuries to a stevedore, occasioned by the negligent use of such appliances by his employés.

[Ed. Note.—Limitation of liability of shipowner, see note to The Longfellow, 45 C. C. A. 387.]

2. SAME—INJURY OF STEVEDORES—LIABILITY OF OWNER.

Where the bulkhead between two bins in a coal barge was faulty in construction and insufficient to sustain the pressure if one bin was unloaded while the other was full, and the defects were such as could readily have been discovered by the master by inspection, but he directed the unloading of one bin before the other, and in consequence the bulkhead collapsed and killed and injured stevedores engaged in discharging the coal, the injuries were attributable to the negligence of the master, for which the owner was responsible, and without contributory negligence on the part of the persons injured, who had a right to rely upon the duty of the owner to provide them with safe place in which to work.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 335, 350.]

Appeal from the District Court of the United States for the Eastern District of New York, in Admiralty.

Appeals from a decree limiting the liability of the Excelsior Coal Company, owners of the barge Harry Hudson Smith, but holding the company liable for $4,925.60, the appraised value of the barge. The proceeding was instituted by the company for the purpose of determining whether it was liable for damages arising from the breaking of a bulkhead in the said barge while being discharged at Belle Dock, New Haven, Conn., on May 22, 1903, and in the event that the court should find the petitioner liable, then for a judgment limiting its liability. The barge was loaded with coal; the bulkhead in question was between bins numbered 1 and 2. After all but 40 tons had been removed from bin 2 the bulkhead collapsed killing one of the stevedores and injuring three others. These men were employed by the New Haven Railroad Company, but their wages for this service were paid by the consignees. The

coal company appeals from so much of the decree as holds it liable to the extent of the sum named. The damage claimants insist that the company was not entitled to any limitation of liability and appeal from that portion of the decree which holds otherwise. Other minor points relating to costs and expenses are involved in these appeals. The opinion below relating to costs and expenses is reported in (D. C.) 136 Fed. 271.

James K. Symmers, for appellant.
Edward H. Rogers and J. Parker Kirlin, for damage claimants and cross-appellants.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts). The statute provides that the owner of a vessel may limit his liability provided the damage was occasioned "without the privity, or knowledge of such owner." Rev. St. § 4283 [U. S. Comp. St. 1901, p. 2943]. The District Court held that the bulkhead was improperly constructed to stand the strain occasioned by the negligent method of unloading adopted by the master of the barge on the occasion in question. The court found the owner liable for this fault, but held that, having purchased the barge from a responsible and highly competent builder and having made an initial inspection, the collapse of the bulkhead cannot be attributed to the privity or knowledge of the owner.

The construction of the bulkhead was manifestly improper if the bins were to be unloaded separately, and the presence of the "gate" in the lower section would seem to indicate that such unloading was not only contemplated but expected. Nevertheless, we incline to the opinion that an owner, who, after a general inspection, purchases a vessel from a shipbuilder of recognized standing and reputation, who equips her with machinery, means and appliances which are suitable and sufficient if properly used, should be permitted to limit his liability for damage occasioned by the negligent use of such appliances by the owner's employés. If the bins had been unloaded simultaneously, or if a sufficient amount of coal had been left in bin No. 2 to sustain the bulkhead, no accident would have happened. Before the master directed or permitted a course to be taken which put the lateral strain of 160 tons of coal upon the bulkhead he should have made an examination to ascertain if it were in a condition to withstand such pressure. Had he done so he would have discovered the inadequacy of the nails in number and size and, as the unloading continued, the insufficiency of the hooks supporting the cleat in the middle of the bulkhead.

These are faults which may be imputed to the owner in an action of negligence, but we do not think the mere existence of such faults and defects warrants the implication that the owner had knowledge of, or was privy to, the act or omission which caused the damage, within the meaning of the limited liability act. The question is an interesting one and by no means free from doubt but considering all the circumstances we are disposed to resolve the doubt in favor of the petitioner. The decree does substantial justice to all the claimants.

We think the testimony warranted the District Court in finding that the coal company was negligent and that the persons injured were free

from concurring negligence. It was the duty of the coal company to exercise reasonable skill and care, to provide a suitable and safe place in which to work for persons lawfully employed on its barge. If an injury be inflicted by reason of a defect of which the owner, or the agent to whom the owner's authority is delegated, knew or might have known by the exercise of reasonable diligence, the owner is liable. The evidence certainly warranted the conclusion that the bulkhead was defective.

First. It collapsed. If it were intended to support the strain when bin No. 2 was empty and bin No. 1 was full it proved inadequate and this alone was sufficient to raise a presumption of fault.

Second. The top cleat was faulty in construction and insufficiently secured. The nails were too few in number, did not go through the boards, but were driven into the upper beam so that the weight of the coal in the adjoining bin exercised a straight strain or leverage tending to pull them out. Had the cleat been so placed that the strain would have been at right angles to the axes of the nails the construction would, apparently, have been much safer.

Third. The hooks on the middle cleat were insufficient and pulled out when the strain came.

That all of these defects could have been discovered by the master if he had made the slightest effort in that direction is too plain for debate. Ten minutes inspection when the barge was empty would have disclosed them all and he was bound to make the inspection, especially if he intended to unload the bins in a manner conceded to be dangerous by those engaged in the business of unloading coal.

The injured men were mere coal shovelers. They had a right to rely upon the obligation of the owner to provide a safe place in which to work. Presumably they knew nothing of boat building and, even if they possessed some knowledge, there was no opportunity to exercise it, as the bins were full when they were ordered to work. The defects were not so obvious that an ordinary stevedore would discover them and the failure of these coal shovelers to do so cannot be imputed to them as negligence.

We think the court correctly disposed of the questions relating to costs and expenses.

The decree is affirmed, with interest and costs.