## LA GUERRA v. BRASILEIRO.

### Civ. No. 1506.

District Court, E. D. New York.

June 13, 1941.

Samuel B. Goodman, of New York City (David S. Romanov, of New York City, of counsel), for the motion.

Bigham Englar, Jones & Houston, of New York City (John M. Aherne, and John L. Quinlan, both of New York City, of counsel), opposed.

CAMPBELL, District Judge.

This is a motion made by the plaintiff for an order vacating the judgment entered herein on May 8, 1941, and granting to the plaintiff a new trial, on the ground that the Court erred in granting defendant's motion to dismiss the complaint at the end of the plaintiff's case, and for such other and further relief as to the Court may seem just.

On July 24, 1940, the defendant, as owner thereof, turned over its Steamship Cantuaria to the independent contracting stevedore, Universal Terminal & Stevedoring Company, to discharge the cargo from said vessel, consigned to New York, which meant the Port of New York. On that day the plaintiff was in the employ of the said stevedores as a holdman, but was not an employee of the said Steamship Cantuaria, or her owner the defendant.

When the plaintiff came on board he, as instructed by his employer, proceeded to No. 4 hatch to assist in discharging that portion of the cargo destined for New York, which consisted of coffee beans, and was in the forward part of hatch No. 4.

In the after part of that hatch was stowed the portion of the cargo destined for Philadelphia consisting of cocoa beans, which were stowed from the deck to the beams on the under side of the deck above and in the hatch square up to the beams on which the hatch cover rested.

The hatch covers and beams at least, if not all, those over the after part were removed by the said contracting stevedore, its agents, or servants. The work of discharging the cargo generally was under the orders and control of Charlie Johnson, the stevedore's Superintendent, and particularly the cargo for New York from hatch No. 4 was under the direction and control of the hatch boss, Fucelli, the representative of the independent contracting stevedore, and the subordinate of the Superintendent Johnson, and no officer of the ship, or her owner, was present at hatch No. 4 at any time during the unloading, or discharging of the cargo from said hatch, nor did any such officer give any order or direction with reference to the same.

At the time the Steamship Cantuaria was turned over to the independent contracting stevedore, and at the time the plaintiff commenced to work, the plaintiff was presented with safe access to hatch No. 4, and a safe place therein to work.

There was no defect in the vessel, or any of its appliances, or equipment.

Frequently in the testimony the word "bulkhead" is used to describe the forward line of the cargo destined for Philadelphia, in the after part of the hatch, but that word was not used to describe any wooden or metal structure, but simply to describe a method of storage of the bags of cargo for Philadelphia.

After the holdmen had been working discharging the New York cargo for about an hour, they discovered that bags on the top of the forward line of the Philadelphia cargo were leaning forward, and they believed it was dangerous to them, and they notified the hatch boss who, after looking at it, ordered them to remove several drafts which they did about 50 bags in all of the Philadelphia cargo. The holdmen wanted to remove more, but the hatch boss directed them to knock off and resume the discharge of the New York cargo.

Before removing any of the Philadelphia cargo the hatch boss obtained the permission of the head assorter, an employee of the Universal Terminal & Stevedoring Company, and did not notify the vessel, or any of her officers, of the condition.

The only member of the crew of the ship, who was present, was a sailor whose duty it was to point out cargo destined for discharge at various ports. The sailor was not an officer of the ship, but only a member of the crew, and the hatch boss took no orders from that sailor. Fucelli testified that he asked the sailor for rope to lash the cargo. The sailor left the hatch, and about 15 or 20 minutes thereafter, and before he returned the accident occurred. Work continued after the sailor left, and the accident occurred about one-half hour after they had resumed work when several bags from the top of the Philadelphia cargo fell, and the plaintiff, who was working below, was struck on the back.

█ No authorities need be cited to show that on a motion to dismiss the plaintiff is entitled to the best inferences deductible from the evidence.

█ The outstanding fact is, however, that the ship owner turned the ship over to an independent contractor in a safe condition for the purpose of discharging her cargo, destined for New York; that no officer of the ship gave any orders with reference to, or supervised the discharging of the ship's cargo, and that the plaintiff was the employee of such independent contractor, and not of the ship or her owner, and that he took no orders from any officer of the ship, or from the ship's owner. Therefore, the ship and her owners are not liable for the injuries to plaintiff. The Clan Graham, D.C., 163 F. 961; Long v. Silver Line, Limited, 2 Cir., 48 F.2d 15, 17; The Hindustan, D.C., 37 F.2d 932, 933; The Kongosan Maru, 9 Cir., 292 F. 801; Navigazione Alta Italia, of Turin, Italy, et al. v. Vale, 5 Cir., 221 F. 413; The Saranac, D.C., 132 F. 936; The Auchenarden, 100 F. 895; The Wm. F. Babcock, D.C., 31 F. 418.

No question of master and servant is in issue here, as there was no contractual relation between the ship, or her owner, and the plaintiff, but the plaintiff was the employee of an independent contracting stevedore.

The ship on July 25, 1940, was in safe condition when the stevedores boarded the ship. No trouble arose until and as a result of the discharge of a part of the New York cargo, by the stevedores, and then

not until after the stevedores had removed a portion of the Philadelphia cargo, but not the quantity which the holdmen requested, their request having been overruled by their immediate superior, the hatch boss, the representative of the independent contracting stevedore. When the accident occurred the condition of the Philadelphia cargo was not what it was when the ship was turned over to the stevedores. The cargo, when the ship was turned over to the stevedores, had reached up to the beams in the hatch square before they were removed. The front line of the Philadelphia cargo, which is described as the bulkhead, had been built up a certain distance, as plaintiff contends it should have been, but the top was not. All of this was obvious to the hatch boss, and the holdmen including the plaintiff, and they, after working about an hour, asked the hatch boss for the removal of a sufficient number of bags to relieve from any danger, but the hatch boss would not allow them to remove what they considered sufficient bags, and the fault was not that of the ship, or her owners. The Beechdene, D. C., 121 F. 593; Bettis v. Frederick Leyland & Co., Limited, 5 Cir., 153 F. 571; Belos, (Gonzales' Case).[1]

■ A special skill is demanded of stevedores. Atlantic Transport Company of West Virginia v. Imbrovek, 234 U.S. 52, 62, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157.

The employees of stevedores are selected for their capability and skill in such work. Atlantic Transport Co. v. State of Maryland, to Use of Jakubczak et. al., 4 Cir., 259 F. 23, 28.

I have read and carefully considered plaintiff's argument in an attempt to distinguish the case at bar from the decision in The Beechdene, D.C., 121 F. 593, but I am convinced that he has not done so, and that case I find to be directly in point.

On behalf of the plaintiff the following cases are cited as authority in support of his contention that defendant is liable because it did not, in the hatch in which he was injured, provide him with a safe place to work:

The Frank and Willie, D.C., 45 F. 494. Not in point. In that case plaintiff was in the employ of the ship, there was no independent contracting stevedore, and unloading was under the orders of the mate of the ship who adopted the method held to be dangerous.

Leathers v. Blessing, 105 U.S. 626, 26 L. Ed. 1192. Not in point. In that case plaintiff was a business visitor who was injured by a falling bale, no independent contracting stevedore, but the discharging was being done by the vessel.

McGrath v. Pennsylvania Sugar Co., 282 Pa. 265, 127 A. 780. Not in point. In that case injury occurred on wharf, not on vessel, plaintiff, an independent stevedore, was working on a pile of sugar bags on dock and the assistant dock foreman, the owner's representative, interfered with the stevedore's method, by reason of which injuries were received. Such interference held to be act of vessel's owner for which he was held responsible.

Peter Buckley, Appellant, v. Cunard Steamship Company, Ltd., Respondent, 233 App.Div. 361, 253 N.Y.S. 254. Not in point. Plaintiff in that case, a longshoreman, was in the direct employ of the steamship company, the vessel's owner, not of an independent contracting stevedore, a clear case of master and servant.

John Spry Lumber Company v. Duggan, 182 Ill. 218, 54 N.E. 1002. Not in point. In that case two gangs were employed in discharging a ship; one aboard ship working as employees of an independent contractor, of which plaintiff was one; the other, working on the dock piling lumber regular employees of vessel's owner. Plaintiff injured on dock when pile of lumber fell. Vessel's owner held liable for acts of his employees.

Gerrity v. The Bark Kate Cann, D.C., 2 F. 241. Not in point. In that case a rack erected in the tween decks by the vessel's crew for holding dunnage gave way, and fell upon plaintiff, and injured him. Liability found because the rack was a dangerous structure or appliance of the ship.

The Joseph B. Thomas, 9 Cir., 86 F. 658, 46 L.R.A. 58. Not in point. In that case crew of ship placed a freshly painted keg, part of the ship's equipment, on hatch cover to dry. Stevedores working in hold below injured by keg falling into the hold. Damages resulted from dangerous placing of apparel and furniture of the ship.

Port of New York Stevedoring Corporation v. Castagna, 2 Cir., 280 F. 618. Not in point. That was not an action against ship, but an action by a longshoreman,

---

[1] No opinion for publication.

against the stevedoring company, which employed him. Clear case of master and servant.

The Thomas Cranage, D.C., 189 F. 1003. Not in point. In that case a longshoreman was injured by fall of hatch covers which had been removed and negligently piled by crew of vessel on the deck above hold in which the stevedores were working. Stevedores had nothing to do with removal of hatch covers. The accident was the result of the negligent acts of the crew with reference to an appliance of the vessel.

The Adour, D.C., 21 F.2d 858. Not in point. In that case a semipermanent bulkhead of heavy timbers had been erected by the ship between hatches No. 1 and No. 2 to prevent the shifting of cargo fore and aft. Plaintiff injured by fall of a part of the bulkhead. Ship held responsible for bulkhead as part of structure or appliance of ship.

None of the cases cited on behalf of the plaintiff relate to injuries received from any cargo stowed on the ship by a longshoreman or stevedore in the employ of an independent contracting stevedore, who was removing or discharging cargo, but all relate to situations where the general rule of liability of the ship, or its owner, to any one legally on board for defective structure, appliances or equipment of the ship is applicable, or where there was a relationship of master and servant, or where the work was supervised or controlled by an officer of the ship or of the owner, or where the injuries were received on the wharf or on the land and none of them are authority adverse to the decisions in The Beechdene, supra; The Belos, supra, and Bettis v. Frederick Leyland Co., Limited, supra, cited on behalf of the defendant, which are in point.

On the motion to dismiss made on the trial I examined many cases cited on behalf of the plaintiff, and contended to be authorities for the denial of the motion, and found the same not to be in point, and I do not find that any of the cases cited on behalf of the plaintiff on this motion add any weight in his favor to the cases so cited on his behalf on the trial, or change, in any way, the opinion I formed when I granted the motion to dismiss on the trial.

This motion for an order vacating the Judgment entered herein on May 8, 1941, and granting to the plaintiff a new trial, is denied.