## THE DALHEM.

## KIRBY v. SWEDISH MOTOR VESSEL DALHEM.

### No. 886.

District Court, D. Massachusetts.

Oct. 27, 1941.

James F. Sullivan and Bartlett, Jennings & Bartlett, all of Boston, Mass., for libelant.

---

Thomas H. Walsh, of Boston, Mass., for claimant.

FORD, District Judge.

This is a libel in rem brought by Edward J. Kirby, a stevedore, against the Swedish motor vessel Dalhem to recover for injuries caused by a collapse of cotton bales while the libellant was discharging cargo from the hold of the Dalhem on October 22, 1940.

The libel alleges as the ground for recovery that the owner, or agents, of the Dalhem were negligent in failing to (a) provide the libellant a safe place to work and (b) warn him of a concealed danger on the vessel.

### Findings of Fact.

On October 22, 1940, the Dalhem was docked at Pier 43, Hoosac Docks, Charlestown, Massachusetts. The libellant, Kirby, was employed at that time by Atlantic and Gulf Stevedores, Inc., an independent contractor, hired to discharge cargo from the Dalhem. At about 7 p. m., on October 22, the libellant boarded the vessel and reported for work to his hatch boss, one Bell. He was assigned, with other stevedores, to aid in unloading cotton from No. 3 hold. No warning was given to him, to Bell, or to any other employee of the contractor, by an officer or agent of the vessel, of any unusual or dangerous condition existing in hold No. 3, or No. 2 hold forward of No. 3.

In accordance with Bell's instructions, Kirby and the other longshoremen proceeded to the No. 3 hatch of the Dalhem and commenced to discharge a cargo of bales of cotton. The bales were removed by hooks attached to a strap, which is attached to a fall hanging from a winch on the deck. The stevedores attached the hooks to the bales, and the latter were then hoisted up in groups of four to six bales by the operation of the winch. The libellant and other stevedores removed about four tiers of bales in the square under the hatch opening to give them "working height". Then, standing on top of the remaining bales, the stevedores commenced to take out other bales from the four top tiers. The libellant was working on the port side of the ship. He had just attached hooks to a bale about two tiers forward of the hatch opening when the bale on which he was standing and about 125 to 150 others forward of it collapsed into No. 2 hold. The libellant fell forward to the floor of hold No. 2 sustaining injuries.

No. 3 hold contained 1729 bales of cotton. There was no cargo in No. 2 hold, it having been discharged at Baltimore, Maryland, the previous port of discharge to Boston. The bales of cotton were 18 to 20 inches square and approximately 4 feet long. Each bale weighed about 500 pounds. No. 3 hold was about 20 feet 6 inches deep and the bales were stowed in it from about its middle to the after part of No. 2 hold. There were between eight and eleven tiers of bales which reached to almost within a foot of the deck. The bales were stowed two tiers alongship and one across from starboard to port. They had been stowed in the ship under the direction of its officers at Santos, Brazil. All of the bales were wrapped in burlap and bound, on the average, by nine steel bands.

The first officer testified that the bales were packed as close together as possible and that this was the customary method of stowing cotton. The superintendent of the stevedores, Mr. Crocker, testified that he inspected this part of the cargo from the deck of the vessel, and that it appeared to be stowed in the customary manner. He did not descend into the hold itself for the purpose of making a specific inspection to determine how the bales were stowed.

Evidence, given by the other stevedores who were working in the hold at the time of the injury to Kirby, showed that immediately after the accident they observed holes among the bales of cotton that remained standing next to those that had collapsed. Bell, the libellant's hatch boss, testified that the bales remaining standing after the accident to the libellant appeared "like flights of stairs, as if they were going to fall when you went up near them". Another witness testified it appeared, after the accident, as though "there was a big belly" in the bales. Another testified "they were sticking out from one another". The evidence also showed that the bales which collapsed were, for the most part, those forward of the place where Kirby was working and were strewn all about the floor of No. 2 hold with some in No. 3.

The Dalhem on leaving Santos had made calls at Baltimore and other ports before coming to Boston. When the cotton was stowed at Santos, Brazil, there was a bulkhead between No. 3 hold, where this cotton with which we are concerned was stowed, and No. 2 hold. After the discharge of a

cargo of ore from No. 2 hold at Baltimore, this bulkhead, which separated holds No. 3 and No. 2 to a height of 6 or 7 feet out of a total height of 20 feet, was removed. This fact was not disputed.

### Conclusions.

From this evidence, it seems reasonable to conclude that the cause of the bales' collapse here was lack of lateral support which had been removed by the fault of the vessel's agents.

According to the testimony of the vessel's first officer, the bales were tightly packed at Santos, Brazil. To quote his exact testimony, "they were as close as it was possible to put them. * * * They were so close together that there would not be any space between them". It may fairly be inferred from the testimony of the witnesses who observed the condition of the bales standing after they had collapsed, that they had become loosely packed when the vessel arrived in Boston. The testimony of the superintendent, who observed the cotton only from the deck, is not convincing when weighed against the testimony of the men who actually were in the hold immediately after the accident and were in a position to see the inside of the mass of bales. It is fairly inferable that removal of the bulkhead, support from which it can reasonably be deduced was relied on when the bales were originally stacked so tightly together, provided the cause for well-stowed bales of cotton to fall apart from each other. A further indication that removal of support from this side with consequent slipping apart of bales under the stress and strain of an ocean voyage was the cause of the collapse that produced Kirby's injuries, is the fact that the bales which fell were those forward of Kirby's position, that is, the bales adjacent No. 2 hatch for which the bulkhead would ordinarily provide support.

In view of these circumstances and in the absence of any other explanation being advanced or suggested by common experience, I conclude that the negligent removal of this support finally caused a loose condition of the bales which resulted in their giving way under Kirby's weight.

In removing the support from the bales, the ship created a foreseeable risk. The stevedores could not reach the upper bales from the floor. Those who removed the bulkhead must have known that the stevedores would have to use the lower bales as a working place. This being true, it might easily have been anticipated that, if the bales were permitted to become loosely packed, the kind of accident that actually happened would happen.

No evidence was introduced to show that inspection by the libellant would have shown the danger, or to show that to make such inspection is the ordinary practice of stevedores. There is no evidence that the libellant was not performing his work in a careful manner. There was no negligence on his part.

The libellant, an employee of an independent contractor who is doing work for the benefit of the Dalhem's owners, had the status of an invitee aboard the vessel. Mystic Terminal Co. v. Thibeault et al., 1 Cir., 108 F.2d 813, 814; Consolidation Coastwise Co. v. Conley, 1 Cir., 250 F. 679; Burrell et al. v. Fleming, 5 Cir., 109 F. 489; The Illinois, D.C., 63 F. 161; Crimmins v. Booth, 202 Mass. 17, 88 N.E. 449, 132 Am. St.Rep. 468. Consequently, the owners of the vessel had a duty to provide the stevedore-libellant with a safe place to work and warn him of any hidden or concealed dangers. See cases just cited and Grays Harbor Stevedore Co. v. Fountain, 9 Cir., 5 F. 2d 385; The Harry Hudson Smith, 2 Cir., 142 F. 724; The Joseph B. Thomas, 9 Cir., 86 F. 658, 46 L.R.A. 58. From a breach of this duty by the owners or crew of a vessel liability arises for injuries sustained by persons lawfully engaged in working in the hold. The Wyneric, D.C., 156 F. 276. Here, the breach of duty consisted of the negligence of the Dalhem's master, in directing, or permitting removal of a separating bulkhead which caused an unsafe condition of the cargo. Cf. The Harry Hudson Smith, supra. Liability of the ship for the resulting injuries follows under the principles herein set forth.

The cases of La Guerra v. Brasileiro, D. C., 39 F.Supp. 668, and The Beechdene, D. C., 121 F. 593, wherein recoveries by stevedores for injuries resulting from collapse of cargo were denied, may be easily distinguished from the instant case. In both of these cases the only fault of the ship was in defective stowage which might have been the fault of stevedores who had done the loading. There was no such change in the condition of the ship as removal of a bulkhead, and in neither case did the defective stowage create a danger until the stevedores removed other supporting cargo which might give rise to the inference that

negligence of the stevedores contributed to the accident. Here, the removal of upper tiers of bales could not have created the loose condition of the lower tiers. The conclusion seems inescapable that the negligent act, outlined above, of the ship's master or crew which violated their duty to the libellant was the sole cause of the injuries received by him.

In this view, there is no need to discuss the contention of the libellant that the doctrine of res ipsa loquitur is applicable to the facts of this case.

The case is referred to a Commissioner for the purpose of assessing damages and a decree will be entered for the amount assessed, with costs.